THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANTHONY JAMES GLASS, Defendant-Appellant.

Fourth District   No. 4—85—0687

Opinion filed June 16, 1986.

Daniel D. Yuhas and Jane Raley, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Kenneth R. Boyle, Robert J. Biderman, and Michael Blazicek, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

Defendant pleaded guilty to one count of attempt (aggravated criminal sexual assault) in violation of section 12—14(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(a)(2)) and was sentenced to 15 years' imprisonment. Upon denial of his post-plea motion, defendant appeals from the sentence imposed.

On appeal, defendant challenges his sentence contending (1) it was

improper for the court to consider the facts underlying charges dismissed as part of the plea agreement, (2) it was improper to consider these same facts to enhance his sentence to the maximum 15-year term of imprisonment, and (3) defendant's 15-year sentence was an abuse of discretion.

The facts are not controverted. Defendant was originally charged by indictment with two counts of attempt (aggravated criminal sexual assault), two counts of aggravated battery, and single counts of residential burglary, robbery, and unlawful restraint. The charges stemmed from separate attacks defendant perpetrated on three women. On January 14, 1985, defendant pleaded guilty to one count of attempt (aggravated criminal sexual assault) involving an attack on Julie Powell. In return, the State agreed to drop all other charges. The plea bargain did not encompass any sentencing agreement.

The factual basis supporting the plea indicated that on September 21, 1984, at approximately 3:20 a.m., Powell returned to her Champaign apartment. While parking her moped, an automobile drove up with its headlights illuminating the area in which she was standing. Powell was able to read and retain the license number. As Powell ascended the stairs to her apartment, defendant questioned her as to whether someone lived in a particular apartment. Powell replied that she did not know and then proceeded into her own apartment. Within a few seconds defendant knocked on the door and asked if he could use the telephone, stating that he had been attacked and wanted to call the police. Powell permitted defendant to use the telephone. After he finished the call, defendant turned toward Powell and announced that he was going to rape her. They struggled and defendant tore off her clothes. Powell was scratched in several places and began to scream. At that moment, Powell's roommate entered the apartment. Defendant abandoned the attack and fled.

After accepting the plea, a sentencing hearing was held on February 19, 1985. In aggravation, the State presented testimony from the two other victims of defendant's attacks, Lisa Montgomery and Cynthia Knapp. All charges relating to these separate attacks had previously been dismissed as part of the plea bargain. Defendant did not object to the presentation of this testimony. Defendant did not cross-examine Knapp and asked only one question of Montgomery. In substance, their testimony was as follows.

Lisa Montgomery testified that on August 3, 1984, she was returning from the University after a final examination. While checking her mailbox, defendant grabbed her from behind across the mouth. Defendant told Montgomery not to scream and said, "Don't move or I

will hurt you," before forcing her to the ground. Defendant also called her a "bitch" a number of times while emptying her wallet and purse. Defendant then pulled down Montgomery's shorts to mid-thigh at which time she began to struggle. Defendant punched her in the head and smashed Montgomery's head against a concrete wall several times. Montgomery screamed and defendant fled.

Cynthia Knapp testified that on September 21, 1984, at 12:50 a.m. (approximately two hours before defendant's attack on Powell), she was walking down the street when defendant grabbed her by encircling her chest with his left arm. Defendant then placed a sharp object in her right side and said, "Don't move or I will kill you." Defendant told Knapp not to scream and to act normal because they were "just going to have some fun." Knapp screamed anyway, twisted free, and enlisted the aid of a passing cyclist. Defendant fled.

The presentence report indicated that defendant was a 19-year-old graduate of Urbana High School with no prior offenses. The report also revealed that defendant was employed variously at summer and part-time jobs most of which were at restaurants. In mitigation, defendant presented eight character witnesses who testified that he was a good worker and a good student with potential. Two of defendant's teachers testified that he was originally an EMH student, but had overcome that disability and now helped tutor younger students. Defendant's brother testified that he was prepared to help defendant matriculate into Eastern Illinois University. Defendant's pastor testified that defendant regularly attended church and participated in youth activities. A neighbor testified that defendant was personable, intelligent, and had done a nice job maintaining the neighbor's lawn. Finally, defendant's mother, sister, and another family friend testified in the same vein as to defendant's good character.

During argument, the prosecution recommended that defendant be sentenced to the maximum term of 15 years' imprisonment. Defendant requested probation or periodic imprisonment or at most, a minimum 4-year term. During his argument the prosecutor made extensive reference to the testimony presented by defendant's two other victims. The trial court momentarily stopped the prosecutor and asked if the defense had any objection to consideration of this testimony. The defense said that it did not.

The trial court made extensive findings with regard to each factor in mitigation and aggravation. In doing so, the judge considered all three attacks. The only mitigating factors which the trial court found were that defendant had no history of criminal conduct and that it was uncertain, but possible, that defendant would comply with proba-

tion.

Specifically, the trial court found that defendant's conduct did cause or threaten harm because he used a weapon in the Knapp attack and repeatedly struck Montgomery's head against a concrete wall. The judge was uncertain as to this factor in the Powell attack because defendant had been interrupted by the intervention of Powell's roommate.

The trial court also stated that defendant did contemplate that his conduct would cause or threaten serious harm based on the testimony of Knapp and Montgomery. Citing all three batteries, the court found there was no strong provocation for the crimes. The court also found that the loss to Powell could not be compensated because she was the victim of psychic injuries occurring from this type of random violence. Finally, the court found that it was necessary to deter random street crime, making probation inappropriate.

Defendant was then sentenced to the maximum term of 15 years' imprisonment after which the trial court stated:

> "I want to indicate, so that no-one is confused about what this sentence means. That but for the fact that the other charges were dismissed, had this case been tried and had this Defendant been convicted of the other offenses, this Court would have no hesitation about imposing consecutive sentences for all criminal behavior which occurred in this case. That is the reason why the Court did not, as it sometimes does, give this Defendant anything less than the maximum sentence available. As far as I am concerned, he has received the sentence he is entitled to by having the other counts upon which consecutive sentence could have been imposed, dismissed."

As we have previously stated, defendant's motion to withdraw his guilty plea was subsequently denied and an appeal has been perfected.

■ Defendant initially argues that presenting evidence of the other attacks for which defendant was charged, after those charges were dismissed, was an implicit violation of the plea bargain which rendered defendant's plea involuntary. In support of this proposition, defendant relies solely upon the California Supreme Court case of *People v. Harvey* (1979), 25 Cal. 3d 754, 602 P.2d 396, 159 Cal. Rptr. 696. In *Harvey*, the California Supreme Court enunciated, for the first time, the theory that a sentencing court could not properly consider any of the facts underlying a dismissed count for purposes of aggravating a defendant's sentence on remaining counts because of an implicit understanding that the defendant would suffer no adverse sentencing consequences by reason of the facts underlying and solely

pertaining to a count which was dismissed pursuant to a plea bargain. The *Harvey* court cited no authority for this proposition but limited the holding only to dismissed charges which were not transactionally related to the crime for which defendant pleaded guilty. See *People v. Guevara* (1979), 88 Cal. App. 3d 86, 151 Cal. Rptr. 511.

The reasoning and holding of the California Supreme Court have never been applied, to our knowledge, outside the State of California. In fact, it has been specifically rejected by the Supreme Court of Nevada in *Ferris v. State* (1984), 100 Nev. 162, 677 P.2d 1066. There, the defendant argued that Nevada ought to apply the rationale of *Harvey* such that when the State agrees to dismiss charges in exchange for a guilty plea to a separate, unrelated charge, the State ought to be precluded from including information pertaining to the dismissed charges in the presentence report. In addressing this issue the Nevada Supreme Court, in a *per curiam* opinion, stated:

> "We reject the *Harvey* decision, and we decline to imply such an understanding into plea bargains. Such an implied understanding would ignore the practicality of a district judge's involvement in the entry of the guilty plea. The district judge who sentences a defendant is usually the same district judge who accepted the guilty plea, and the judge already knows the charges have been dismissed in exchange for the plea. Furthermore, because of allegations contained in the charging document, the judge is also already aware of the nature of the dismissed charges." 100 Nev. 162, 163-64, 677 P.2d 1066, 1067.

Defendant maintains that there is no contrary law in Illinois to the rationale expressed in *Harvey*. Although, strictly speaking, defendant's argument in this case has apparently never been made to an Illinois reviewing court, there is a substantial body of authority approving consideration of facts underlying dismissed charges in return for a plea when sentencing a defendant. (See *People v. Popescue* (1931), 345 Ill. 142, 177 N.E. 739.) In fact, the preeminent case in Illinois for the proposition that a trial court can consider such facts which did not result in convictions in sentencing a defendant involved a guilty plea. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Other Illinois appellate decisions have also found no infirmity in this procedure. See *People v. Williams* (1971), 2 Ill. App. 3d 939, 275 N.E.2d 215; *People v. Farley* (1975), 27 Ill. App. 3d 568, 327 N.E.2d 80 (abstract of opinion); see also *People v. Brown* (1982), 103 Ill. App. 3d 306, 431 N.E.2d 43.

Moreover, in those jurisdictions which have directly considered the question presented, the vast majority have concluded that it is not im-

proper to consider the circumstances underlying dismissed charges in sentencing a defendant after a plea. In *United States v. Majors* (10th Cir. 1974), 490 F.2d 1321, 1324, *cert. denied* (1975), 420 U.S. 932, 43 L. Ed. 2d 405, 95 S. Ct. 1136, the court said:

> "By his plea bargain and the subsequent dismissal of the indictment against him for interstate transportation of a stolen motor vehicle, Majors was neither acquitted nor convicted, and the dismissal of the indictment for this offense did not deprive him of any constitutional or other right. The dismissed indictment and the charge contained in it are within the kind of information when a court may properly consider in passing sentence. The plea bargain and the indictment dismissal resulting from it did not and, indeed, could not, deprive the judge of the right and probably the duty of giving consideration to it."

In *People v. Lowery* (1982), 642 P.2d 515, 518, the Supreme Court of Colorado stated:

> "Within the court's broad discretion to sentence one convicted of a crime, it is proper for the judge to consider aggravating or mitigating information, including other charges dismissed at the time of the plea, in order to best balance the competing sentencing goals of punishment, deterrence, rehabilitation, and protection of society."

In *United States v. Doyle* (2d Cir. 1965), 348 F.2d 715, 721, the court stated:

> "The narrowing of the indictment to a single count limits the maximum punishment the court can impose but not the scope of the court's consideration within the maximum. The dismissal of the other counts at the Government's request was not an adjudication against it on the merits, ***."

A similar result was also reached by the Wisconsin Supreme Court in *Elias v. State* (1980), 93 Wis. 2d 278, 286 N.W.2d 559.

We conclude that the California authority upon which defendant relies is anomalous. It has not been followed by any other jurisdiction outside of the California State system and it is certainly inconsistent with the substantial precedent from other jurisdictions and the established rule of law in this State that the sentencing judge has broad and relatively unbounded discretion to consider evidence of other crimes which have not resulted in conviction. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344; *People v. Morgan* (1986), 112 Ill. 2d 111.) In this case, the only agreement the State made was to dismiss charges against the defendant. There was no agreement, implicit or otherwise, that the State could not use the charges which

were dismissed in arguing for a maximum term. Moreover, defendant did not object to the court's consideration of this evidence even after having been given a specific opportunity to do so. We therefore reject defendant's argument in this regard.

■ Defendant next contends that the trial court's reliance upon the facts underlying the dismissed counts betray that defendant was sentenced for the seven offenses which were dismissed rather than for the offense to which he pleaded guilty. Defendant relies principally upon the California Supreme Court decision in *Harvey* for the proposition that the trial court could not, under any circumstances, consider the dismissed charges. As we have already determined that the reasoning of *Harvey* should not be followed, this aspect of defendant's argument is without merit.

Defendant also cites, as controlling, the Illinois case of *People v. Hill* (1973), 14 Ill. App. 3d 20, 302 N.E.2d 373. We believe reliance upon *Hill* is misplaced. There, defendant was convicted of a misdemeanor offense of contributing to the delinquency of a child and sentenced to one year's imprisonment. The trial court denied probation after commenting that defendant might have been charged with a felony instead of a misdemeanor. The appellate court held that this observation was improper stating that because defendant was not charged with or proven guilty of committing a felony, it would be improper to use this as a basis for denying probation or setting sentence. The appellate court further found upon consideration of all the evidence that the trial court did not give consideration to important factors in aggravation and mitigation which were present on the record. As such, the decision in *Hill* stands only for the proposition that a trial court abuses its discretion when it considers an improper factor not supported by the evidence or fails to consider all of the statutory factors in aggravation and mitigation.

In this case, the trial court made explicit findings with regard to all factors in aggravation and mitigation. It is without doubt that the trial court placed substantial weight upon the evidence underlying the separate attacks against Knapp and Montgomery, but that, standing alone, is not improper.

The United States Supreme Court stated in *United States v. Tucker* (1972), 404 U.S. 443, 446, 30 L. Ed. 2d 592, 596, 92 S. Ct. 589, 591, that a sentencing judge "may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." (See also *Williams v. New York* (1949), 337 U.S. 241, 93 L. Ed. 1337, 69 S. Ct. 1079.) The Supreme Court has also stated that while due pro-

cess most certainly applies to the sentencing procedure, due process only requires that the sentence not be based on erroneous information or information linked to a denial of a constitutional right. *Gardner v. Florida* (1977), 430 U.S. 349, 51 L. Ed. 2d 393, 97 S. Ct. 1197.

In Illinois, the supreme court has made clear the scope of inquiry available to a trial judge:

> " 'In Illinois, too, we have long held that the judge in determining the character and extent of punishment is not limited to considering only information which would be admissible under the adversary circumstances of a trial. While it must exercise care to insure the accuracy of information considered and to shield itself from what might be the prejudicial effect of improper materials [citation], "the court is not confined to the evidence showing guilt, for that issue has been settled by the plea. The rules of evidence which ordinarily obtain in a trial where guilt is denied do not bind the court in its inquiry. It may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. In doing so it may inquire into the general moral character of the offender, his mentality, his habits, his social environments, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime, the stimuli which motivate his conduct, and, as was said in *People v. Popescue* [345 Ill. 142], the judge should know something of the life, family, occupation and record of the person about to be sentenced." [Citations.]' " (*People v. La Pointe* (1981), 88 Ill. 2d 482, 494-95, 431 N.E.2d 344, 349-50; see also *People v. Morgan* (1986), 112 Ill. 2d 111.)

As the supreme court most recently again articulated in *Morgan*, a sentencing body may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information it may consider or the source from which it may come, as long as the evidence is both relevant and reliable.

█ Here, defendant does not contest the accuracy of the evidence of other crimes which he committed and upon which the trial court relied. Moreover, the evidence is clearly relevant since the other attacks, one occurring only two hours before the attack on Powell, tend to demonstrate a pattern of serious criminal conduct in contradistinction to defendant's proffered evidence of good character. Since the trial court can consider evidence of other crimes, it necessarily follows that proof of other crimes can become an additional factor which bears on the length of defendant's sentence. As long as the trial court

does not consider unreliable evidence, incompetent evidence, improper aggravating factors, or ignore pertinent mitigating factors, the court has wide latitude in sentencing a defendant to any term within the statutory range prescribed for the offense.

■ Defendant finally contends that mitigating factors such as his lack of a prior criminal record and the character testimony offered on his behalf militate against the maximum 15-year term. The supreme court has again recently set forth the standard for review of the propriety of a sentence. Citing *La Pointe*, the supreme court in *People v. Younger* (1986), 112 Ill. 2d 422, stated:

> " 'Reviewing courts have the power under our Rule 615(b)(4) (73 Ill. 2d R. 615(b)(4)) to reduce sentences. The determination and imposition of a sentence is a matter involving considerable judicial discretion, and our recent cases have repeatedly emphasized that the standard of review to be applied in determining whether a sentence is excessive is: Did the trial judge abuse his discretion in imposing that sentence? [Citations.]
> * * *
> The Unified Code of Corrections vests a wide discretion in sentencing judges in order to permit reasoned judgments as to the penalty appropriate to the particular circumstances of each case. [Citation.] We held in *Perruquet* [68 Ill. 2d 149], and emphasize here that "the trial court is normally the proper forum in which a suitable sentence is to be determined and the trial judge's decisions in regard to sentencing are entitled to great deference and weight." 68 Ill. 2d 149, 154.' [Citation.]" 112 Ill. 2d 422, 427.

See also *People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348-49.

Here, the factors in mitigation presented by defendant such as his lack of a prior criminal record and good prospect for future rehabilitation were taken into account. The trial court specifically stated, for instance, that it was possible defendant was likely to comply with a period of probation. Those, however, were not the only factors to be considered.

Defendant claims that the trial court should not have found that his conduct caused or threatened serious physical injury because there was no evidence that Powell received any physical injuries. That Powell was not actually injured was certainly not due to defendant's conduct but to the timely intervention of Powell's roommate which caused defendant to abort his stated plan to rape her. So also, no error occurred when the trial court observed that consecutive sentences

would have been appropriate had these other charges been tried and proven. (See Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4.) Finally, we do not believe it inappropriate for the trial court to conclude that an offer to compensate the victim does not outweigh the adverse psychological effects suffered by the victim of a sexually related attack.

We have examined the record with care and conclude that defendant has failed to demonstrate that the trial court committed any error in the consideration of the statutory factors in aggravation or mitigation. Although defendant would quarrel with the weight assigned to each factor by the trial court, that is a function reserved to the trial court. Excessive sentences do not exist in a vacuum. They are the product of some error in the manner in which they are imposed. Absent a showing of error, we cannot conclude that the trial court abused its discretion in sentencing defendant even if that be to the maximum term.

Accordingly, the judgment of the Champaign County circuit court is affirmed.

Affirmed.

McCULLOUGH, P.J., and GREEN, J., concur.