THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVE JORGENSEN, Defendant-Appellant.

Second District    Nos. 2—87—0756, 2—87—0766 cons.

Opinion filed May 3, 1989.

G. Joseph Weller, of State Appellate Defender's Office, of Elgin, and Daniel D. Yuhas and Theodore A. Gottfried, both of State Appellate Defender's Office, of Springfield, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Steve Jorgensen, along with several codefendants, was indicted by grand jury in case No. 87—CF—73 with home invasion, armed violence, attempted murder, conspiracy, residential burglary, and aggravated battery, and, in case No. 87—CF—97, with two counts of armed robbery. Pursuant to a plea agreement, defendant pleaded guilty to home invasion in No. 87—CF—73 and one count of armed robbery in No. 87—CF—97, and the other charges were dismissed. He was sentenced to concurrent prison terms of 20 years' imprisonment for home invasion and 22 years' imprisonment for armed robbery.

On appeal defendant raises three issues: (1) whether the State vio-

lated the plea agreement by presenting evidence going to a dismissed charge; (2) whether the trial court erred in considering in aggravation that defendant's conduct threatened serious harm and was brutal and heinous, and in considering that on a dismissed charge the victim's age was over 60; and (3) whether defendant's sentence was excessive. For the reasons stated below, we affirm.

The following evidence was introduced at the sentencing hearing. On May 3, 1985, defendant, along with August Zilisch and Troy Pencak, decided to rob the Scharlau home. Pencak, in his statement to police, said that all three had weapons, but Jorgensen denied having a weapon. Pencak stated that Jorgensen threw a rock through the bedroom window. Zilisch said in his statement that he threw the rock. Pencak and Zilisch climbed through the window while defendant stood watch. Mr. Scharlau arose from his bed and approached Pencak. A gunshot fired by Pencak hit Scharlau in the index finger and left cheek. Pencak and Zilisch then bound Mrs. Scharlau's hands and feet and looked around the house for a short time and left.

On March 17, 1986, defendant, Pencak, and Zilisch broke into the Hagopians' house while no one was home. All three were armed with sawed-off shotguns. Later, at about 8 p.m. when Mrs. Hagopian returned home, the three repeatedly beat her, asking her where she kept the money in the house. She was tied up and put in the basement, where she was covered with a mattress. Defendant kept watch over her in the basement. At about 11 p.m. Mr. Hagopian arrived home. He was hit and tied up and told that his wife would be shot unless he told them where he kept his money. The three left a short while later after taking the money in Mr. Hagopian's wallet.

In a statement to police, defendant admitted to committing at least 35 other burglaries.

In mitigation, defendant's wife testified. She stated that she had a two-year-old daughter from a previous relationship and that defendant treated her and her child extremely well. She felt that defendant had changed since he married her. A presentence investigation and a memorandum submitted by a private counseling group were also presented to the court. These documents revealed that defendant was 24, had no prior criminal record, had a stable employment record and strong family support. The presentence report also indicated defendant may have abused cannabis and alcohol during the time he committed the offenses.

Defendant first contends the State violated its plea agreement by presenting evidence at sentencing relating solely to facts underlying a dismissed charge. Under the plea agreement, defendant pleaded guilty

to armed robbery against Mrs. Hagopian, 57, and the armed robbery charge against Mr. Hagopian, 64, was dismissed. At sentencing, the prosecutor presented evidence that detailed the armed robbery against Mr. Hagopian. Defendant contends this evidence violated the agreement because it was implicit in the agreement that the dismissed charge would be completely withdrawn from the proceedings. Defendant argues that it would make little sense for defendant to plead guilty to some charges in exchange for dismissal of others if the latter could be freely used by the State against him at sentencing.

It is well settled that where a guilty plea rests to any significant degree on the promise of a prosecutor, so that the promise is a component for the inducement of the plea, the promise must be fulfilled. (*People v. Davis* (1981), 94 Ill. App. 3d 809, 811; *Santobello v. New York* (1971), 404 U.S. 257, 262, 30 L. Ed. 2d 427, 433, 92 S. Ct. 495, 499.) In this case, however, the record fails to support defendant's contention that the plea agreement was based on the State presenting no evidence of the dismissed charges at sentencing. In return for his plea the State made the following promises: (1) defendant would be sentenced to concurrent terms only; (2) the remaining charges, which included armed violence, conspiracy, residential burglary, attempted murder and aggravated battery, would be dismissed; and (3) no charges would be brought for any other burglaries of which the State had knowledge connecting defendant. There is no mention that the State agreed not to present evidence at sentencing concerning the dismissed charges. Furthermore, if this were a case where the defendant was under the belief that the prosecutor would not present evidence concerning the dismissed charges, it would seem that the defendant's surprise would be reflected in the record by timely objections to the presentation of this evidence. Yet, at no point did defense counsel object to this evidence.

The cases relied on by defendant are easily distinguished. In *People v. Cangelosi* (1979), 68 Ill. App. 3d 489, the prosecutor promised defendant that his plea of guilty would not be used against him to find him in violation of probation. Subsequently, he was found in violation of probation not by the guilty plea but by the evidence relating to that plea. The appellate court held defendant's plea was not voluntary. The court found that the subtle distinction between using the guilty plea itself or the evidence going to the plea mattered little to the defendant, who was induced to plead guilty by the obvious understanding that he would not be found in violation of probation. (*Cangelosi*, 68 Ill. App. 3d at 498.) In *People v. Davis* (1981), 94 Ill. App. 3d 809, 811, the court found that the prosecutor breached his promise

when he promised not to make a sentencing recommendation and then asked the court not to sentence defendant to probation. The case at bar, unlike *Cangelosi* and *Davis*, does not present a situation where defendant's obvious understanding of an agreement was broken. Here, the basis of the agreement, that the prosecutor would dismiss the other charges and that defendant would not be sentenced to serve consecutive sentences, was performed.

■ We do not agree with defendant's contention that it was implicit in the plea agreement that the State would not present evidence of the dismissed charges. Instead, we agree with *People v. Glass* (1986), 144 Ill. App. 3d 296, 301-02, which held that presenting evidence of a dismissed charge does not violate a plea agreement. In *Glass*, the court noted and rejected the California Supreme Court case, *People v. Harvey* (1979), 25 Cal. 3d 754, 602 P.2d 396, 159 Cal. Rptr. 696, which enunciated the theory that evidence at sentencing pertaining to dismissed charges violates a plea bargain. (*Glass*, 144 Ill. App. 3d at 302.) In rejecting *Harvey*, the court noted that the vast majority of the jurisdictions to consider the question have ruled contrary to *Harvey*. More importantly, the court pointed out that the Illinois Supreme Court has held that a sentencing court has wide latitude to conduct a broad inquiry into facts which may tend to mitigate or aggravate the offense and that a court may consider proof of criminal conduct which did not result in a conviction. *Glass*, 144 Ill. App. 3d at 304; *People v. La Pointe* (1981), 88 Ill. 2d 482, 498-99.

Next, defendant argues that the trial court improperly considered Mr. Hagopian's age, 64, as an aggravating factor since the charge for defendant's conduct against Mr. Hagopian was dismissed. The legislature has provided that a relevant factor in aggravation is whether defendant committed the offense against a person 60 years or older (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(8)). The trial court stated that it believed he could consider Mr. Hagopian's age as an aggravating factor even though that charge had been dismissed.

Defendant contends that a careful reading of the statutory language shows that the only time the victim's age may be considered as an aggravating factor is when the defendant has been convicted of a crime against that victim. Defendant points out that the statute specifically states that an aggravating factor is present if "defendant *committed the offense* against a person 60 years of age or older." (Emphasis added by defendant.) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(a)(8).) Defendant compares this provision with another aggravating factor provision, which states; "the defendant's conduct caused or threatened serious harm" (Ill. Rev. Stat. 1987, ch. 38, par.

1005—5—3.2(a)(1)), and argues that the use of the word "conduct" in this provision shows that the legislature intended that all of defendant's conduct would be considered in determining whether there was serious harm, irrespective of the offense charged, whereas the use of the specific word "offense" in the age provision shows that the legislature intended that only the victim of an offense that resulted in conviction could be considered for purposes of this aggravating factor.

■ Defendant's reasoning is flawed. First, the plain meaning of the provision does not limit consideration to just the victim of the offense which resulted in conviction. The statute simply does not say this. It states that defendant must have committed the offense against a person 60 years or older. It does not state that it must be an offense which resulted in conviction. It merely has to be an offense. More importantly, it is clear that a court may consider evidence of criminal conduct that did not result in conviction when sentencing a defendant. (*La Pointe*, 88 Ill. 2d at 498-99.) It seems equally clear that a court may consider as an aggravating factor that this criminal conduct was against a person 60 years of age or older. It would make little sense to find that a court could consider other criminal conduct but must ignore that it was committed against someone over 60 years of age. The supreme court has provided that a sentencing court may make a broad investigation in searching for mitigating and aggravating factors.

> " '[T]he court is not confined to the evidence showing guilt, for that issue has been settled by the plea. The rules of evidence which ordinarily obtain in a trial where guilt is denied do not bind the court in its inquiry. It may look to the facts of the [crime], *and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense.* ***' People v. McWilliams*, 348 Ill. 333 at 336." (Emphasis added.) *People v. Adkins* (1968), 41 Ill. 2d 297, 300-01.

See also *La Pointe*, 88 Ill. 2d at 495.

■ Defendant next contends the trial court erred by considering the threat of serious harm as an aggravating factor where such a threat is inherent in the offenses of conviction: armed robbery and home invasion. To the extent an aggravating factor is inherent in an offense, it may not be used to enhance the sentence imposed. (*People v. Conover* (1981), 84 Ill. 2d 400, 404.) Contrary to defendant's contention, the threat of serious harm is not inherent in the offense of home invasion charged against defendant. Defendant was charged with home invasion in that he intentionally caused any injury to a person within the dwelling (Ill. Rev. Stat. 1987, ch. 38, par. 12—11(a)(2)).

Since *any injury* will suffice for a conviction under this statute, it cannot be said that serious harm is inherent in this offense. A home dweller could suffer an injury by a home invader without being threatened with serious harm. As for the armed robbery conviction, it is evident that the threat of serious harm is inherent in that offense. While the court did remark that defendant's conduct caused a threat of serious harm, it is doubtful that this was a factor relied upon by the court to increase defendant's sentence. In discussing defendant's convictions, the court made the following statement:

> "But, their conduct did cause serious physical harm to others. They had to contemplate that their criminal conduct could cause physical harm to another, and certainly would threaten serious physical harm with the very nature of the offenses."

■ This statement does not appear to reflect an improper consideration by the trial court. The trial judge did not remark that he was considering these facts in aggravation. It appears the judge was merely stating the nature of the offense committed by defendant. In any case, the judge also noted that defendant's conduct actually caused serious harm. Serious harm, as opposed to the threat of serious harm, is not inherent in armed robbery or home invasion since either could occur without serious harm resulting. Thus, the trial court properly considered serious harm as an aggravating factor. Given the presence of actual serious harm in this case, we are not persuaded that defendant's sentence was improperly enhanced by the consideration that defendant's conduct threatened serious harm.

Defendant also contends the trial court erred when it found defendant's conduct exhibited heinous and brutal behavior indicative of wanton cruelty. Section 5—5—3.2(b)(2) of the Unified Code of Corrections provides that a trial court may consider as a reason to impose an extended-term sentence that an offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2).) Defendant, relying on the fourth district case *People v. Killen* (1982), 106 Ill. App. 3d 65, argues that since the trial court did not impose an extended sentence it could not consider the brutal and heinous nature of defendant's conduct. *Killen* held that the factors listed in section 5—5—3.2(b)(2) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(2)) may be considered only to impose an extended sentence. (*Killen*, 106 Ill. App. 3d at 67.) *Killen* was expressly rejected by the fifth district in *People v. Butts* (1985), 135 Ill. App. 3d 132, 135, which stated:

> "[N]othing in the sentencing code explicitly prohibits the court from assessing the brutal character of an offender's conduct

*** when evaluating a nonextended term. Rather, the statutory scheme *permits* extended terms only when certain specified aggravating factors are found, one of which is exceptionally heinous behavior. It does not follow that a consideration of brutal or heinous conduct is disallowed when determining an appropriate nonextended term." (Emphasis in original.) *Butts*, 135 Ill. App. 3d at 135.

■ We agree with the reasoning in *Butts* and point out that it is consistent with the supreme court cases which have reiterated that a sentencing court has wide latitude to consider all the attending circumstances of a criminal act. Furthermore, in *People v. Saldivar* (1986), 113 Ill. 2d 256, 269, the supreme court stated that sound public policy demands that a defendant's sentence be varied in accordance with the particular circumstances of the offense committed. The court held that even in the case of manslaughter, where serious harm was implicit in the offense, it was permissible to consider as an aggravating factor the degree of serious harm, in other words the way in which force was employed and the physical manner in which the victim's death was brought about. (*Saldivar*, 113 Ill. 2d at 271.) *Saldivar* is instructive. It teaches that the degree of harm and the manner of harm in any given case is a relevant factor to be considered in sentencing a defendant. In this case the sentencing court properly considered the manner of serious harm perpetrated by defendant as brutal and heinous.

■ Lastly, defendant asks this court to reduce his sentences, contending his sentences are excessive because the court failed to give appropriate consideration to his rehabilitative potential. A sentence will be reduced by a reviewing court only if the trial court has abused its discretion and the sentence constitutes a substantial departure from the law. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153.) When the sentence imposed is within the limits established by the legislature, it will not be modified merely because a reviewing court might have balanced the appropriate factors differently and imposed a different sentence. *People v. Dunnegan* (1987), 151 Ill. App. 3d 973, 985.

■ Defendant's concurrent sentences of 22 years' imprisonment for armed robbery and 20 years' incarceration for home invasion do not constitute an abuse of discretion by the trial court. Both of these offenses are Class X offenses which provide for a minimum sentence of six years' imprisonment and a maximum term of 30 years' imprisonment. The trial court found, however, that the brutal and heinous character of the crimes in this case allowed the court to impose extended prison sentences which require a term of not less than 30

years and no more than 60 years for Class X felonies (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—2(a)(2)). The evidence supports this finding. The court noted that the defendant's conduct terrorized two married couples, causing them great horror. Defendants broke into the Hagopians' home with sawed-off shotguns and repeatedly beat Mrs. Hagopian. They tied her up and threatened to kill her. Then when Mr. Hagopian came home, they beat him and threatened to kill his wife. This terror lasted three hours. As for the Scharlauses, defendants Pencak and Zilisch crashed through their bedroom window at night while the two were in bed. Pencak shot Mr. Scharlau when Scharlau approached him. Then they tied up Mrs. Scharlau. Defendant stood watch outside the window. Along with this evidence there was also testimony from a police officer that defendant admitted to committing at least 35 burglaries in a six-month period.

Pencak and Zilisch were sentenced at the same time as defendant and received extended terms. Pencak received prison terms of 45 years for armed robbery and 30 years for armed violence. Zilisch received prison terms of 37 years for armed robbery and 20 years for armed violence. In defendant's case the trial court found an extended term would not be appropriate, noting defendant's crime-free record, his lack of learning skills, and stating that there were "less aggravating factors." Defendant argues that the following mitigating factors require still a lesser sentence: defendant's (1) lack of criminal record; (2) stable work history and recommendations from co-workers; (3) family support; (4) remorse and a period of law-abiding behavior following offenses; and (5) youth—24; (6) less culpable role in offenses. We disagree. The trial court's decision to not impose an extended term against defendant establishes that the court carefully considered the mitigating circumstances of defendant's case. We are satisfied that the trial court gave proper consideration to these mitigating factors, and we find that the court did not abuse its discretion in sentencing defendant to 22 years for armed robbery and 20 years for home invasion.

The judgment of the trial court is affirmed.

Affirmed.

LINDBERG and McLAREN, JJ., concur.