THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TOMMIE LEE BANKS, JR., Defendant-Appellant.

Fourth District No. 4—90—0623

Opinion filed April 17, 1991.

Daniel D. Yuhas and Judith Libby, both of State Appellate Defender's Office, of Springfield, for appellant.

Charles G. Reynard, State's Attorney, of Bloomington (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SPITZ delivered the opinion of the court:

Defendant pleaded guilty to the possession of cocaine with the intent to deliver, and now appeals the denial of his amended motion to withdraw his guilty plea and sentence. We affirm in part, vacate in part and remand with directions.

The record reveals the following. Undercover police with the Department of Criminal Investigations, Illinois State Police (DCI), worked with defendant's college roommate, Bill Moffit, to arrange the purchase of a large amount of cocaine from either defendant, or defendant's friend, Marvin Blackshear. According to an Illinois State Police investigation report, Moffit informed defendant that he was trying to arrange a cocaine transaction with Blackshear, and defendant told Moffit that if Blackshear could not obtain the cocaine, he could from the same source. Arrangements were made for defendant

to deliver approximately eight ounces of cocaine to Agent Ken Wurl of the DCI.

On March 23, 1988, at approximately 11:30 p.m., Wurl contacted defendant by phone and defendant told Wurl that everything was set for the transaction. On March 24, 1988, at approximately 1:45 p.m., Wurl again contacted defendant by phone and inquired whether the arrangements were made for the cocaine delivery. Defendant again confirmed that everything was ready. Later that day, at approximately 5:30 p.m., Moffit and Wurl met with defendant, who advised them that the person delivering the cocaine was en route, or maybe already in town.

At approximately 9:01 p.m. that same evening, Moffit contacted defendant by phone. Defendant was waiting for the arrival of the cocaine. Defendant told Moffit that he did not want Blackshear involved in the transaction because Blackshear was unreliable. Defendant wanted to handle the entire transaction himself.

At approximately 11:32 p.m. that night, Moffit again contacted defendant by phone. Defendant informed Moffit that he had just talked to Blackshear, who said that the person delivering the cocaine would arrive in 15 minutes. At approximately 11:47 p.m., Blackshear contacted Moffit and told him that the cocaine had arrived and the two agreed to meet at Blackshear's apartment to conduct the sale.

At approximately 12:09 a.m. on March 25, 1988, Moffit and Wurl went to Blackshear's apartment and discussed the transaction with Blackshear. Blackshear told Moffit that his source was only able to supply four ounces of cocaine, and that he wanted $6,000 for it. After some discussion, Blackshear and Moffit left the apartment to the get the money and Blackshear was arrested. Police later executed a search warrant of the apartment and found a quantity of white powder in plastic containers. According to the DCI evidence log, approximately 112 grams of the white powder were retrieved from the apartment. Later tests by a lab revealed the white powder to be 105.4 grams of cocaine, not including amounts found in paper folds, which were not tested; 27.3 grams of the cocaine were tested for purity and found to be 90% pure. The rest of the cocaine was not tested for purity.

Defendant was arrested later that day, March 25, at another address and taken into custody for an interview. Defendant told police that he had set up numerous narcotic transactions for Blackshear, who would give defendant cocaine in return. Defendant also told the police that four or five days prior to his arrest, Moffit had asked him to contact Blackshear and order eight ounces of cocaine. Moffit told

defendant that a friend in Champaign, Illinois, had $8,000 to buy cocaine.

On March 25, 1988, defendant was charged by information with the possession of a controlled substance, cocaine, in an amount exceeding 15 grams, with the intent to deliver, a Class X offense. (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(a)(2).) Defendant originally pleaded not guilty to the Class X offense. However, at a change of plea hearing on February 7, 1990, the State reduced the charge to a Class 1 offense by lowering the amount of the controlled substance involved from "more than 15" grams to "more than one gram but less than five" grams. In exchange for this reduction, defendant agreed to plead guilty, but no agreement was made as to sentence.

At the plea hearing, the State presented the court with the factual basis for defendant's plea. The State informed the court that Wurl conducted a "purported cocaine buy" from defendant through phone conversations, and that defendant repeatedly told Wurl that everything was set for the transaction. Wurl later talked to Blackshear on the phone, and Blackshear "arranged to furnish Agent Wurl with the cocaine in question. A portion of cocaine was sold to Agent Wurl." After a search warrant was obtained, a search of "Mr. Blackshear's residence was conducted and an amount of cocaine was seized up to one ounce." Defendant was later arrested and told police that he had arranged numerous narcotic transactions for Blackshear.

The court proceeded to advise defendant of his rights pursuant to Supreme Court Rule 402 (134 Ill. 2d R. 402), but failed to inform defendant of the mandatory street-value drug fine (Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1.1). The court found a factual basis for, and accepted, defendant's guilty plea.

At defendant's sentencing hearing on March 8, 1990, an officer with the Illinois State Police testified that the street value of the cocaine seized was in the range of $11,000 to $36,000, depending on the purity of the cocaine and the number of times it was cut. The officer also testified that cocaine sold on the street for $100 a gram.

Defendant testified at his sentencing hearing that he was currently working two jobs, as a cook and as a bag boy, and was three or four classes short of finishing his major at Illinois State University. The last time defendant ever used any illegal substance was in April 1988. Defendant also explained that he had set up drug deals with Blackshear, but only for friends and to obtain drugs for his personal use. Defendant stated that he never set up the deals for money, and that the largest amount of cocaine he ever sold was about a gram.

Defendant also stated that since his arrest, he had not associated with former friends who were involved with cocaine.

The State argued for a sentence of 10 years, and noted that the amount of cocaine seized could have produced 360 grams of final product. If the cocaine was not cut, there would have been roughly 105.4 grams. The State thus argued for a street-value fine in the range of $10,540 to $36,000, based on the testimony that cocaine sold on the street for $100 a gram.

Defense counsel argued for a sentence of probation due to defendant's good behavior since his arrest, and his prior record. Defense counsel also argued that it would be erroneous to impose a street-value fine of anything greater than the minimum figure the State argued, because all of the cocaine seized was not tested for purity. Defense counsel did not argue that the court failed to inform defendant of the mandatory street-value fine pursuant to Supreme Court Rule 402 before defendant pleaded guilty.

The court considered the mitigating and aggravating circumstances, and noted defendant's employment, his nearly completed college degree, his prior history of arranging drug transactions and his prior misdemeanor theft conviction in 1984. The court also noted that the transaction in the instant case involved an arrangement for the purchase of eight ounces of cocaine for $8,000, and that the street value of the substance actually seized ranged somewhere between $11,000 and $36,000. The court further noted that Blackshear had received an eight-year sentence for two felony drug offenses, a Class X offense and a Class 1 offense, and that one of those offenses arose from the instant transaction. The court also noted that Blackshear was younger than defendant and had no prior convictions. The court thought there "ha[d] to be some recognition given to similarities in defendant's sentence as well." Then, after considering the seriousness of the offense and the amount and value of the substance involved, the court sentenced defendant to seven years' imprisonment, with credit for time previously served in the case. The court further ordered defendant's cash bond deposit to be applied as a partial satisfaction "of what would be a street value fine, clearly in excess of the amount of the cash bond deposit after payment of fees and costs from the cash bond deposit." The sentencing court did not determine the actual amount of the street-value fine.

On March 15, 1990, defendant filed a motion to withdraw his guilty plea, which argued that the sentence imposed was too severe. On April 18, 1990, Judge W. Charles Witte entered an order, later amended April 24, 1990, determining the street value of the seized

controlled substance to be $782 and assessing a fine in that amount. The $782 was apparently the remaining amount of defendant's bond money after costs. Judge Witte was not the trial judge, and had been previously substituted from this case on a motion by defendant pursuant to section 114—5(a) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 114—5(a)).

On August 14, 1990, defendant filed an amended motion to withdraw his guilty plea, which the court denied on September 6, 1990. In denying defendant's motion, the court noted that defendant was an "active and primary participant in organizing" the transaction. The court also noted that the planned transaction was eight ounces of cocaine for $8,000, "a rather substantial transaction." Defendant failed to include in his motion or amended motion to withdraw his guilty plea the issue of the court failing to warn him of the mandatory street-value drug fine pursuant to Rule 402. Defendant filed a timely notice of appeal.

On appeal, defendant first argues that his conviction for possession of cocaine with the intent to deliver cannot stand because the State failed to prove that a delivery of drugs took place and that he was involved with any such delivery. Defendant believes the State's factual basis was fatally vague concerning what role he may have played in the transaction, and on the specifics concerning the delivery itself.

Section 115—2 of the Code provides that upon acceptance of a guilty plea, the court shall determine the factual basis for the plea. (Ill. Rev. Stat. 1989, ch. 38, par. 115—2(a)(2).) Illinois Supreme Court Rule 402(c) requires the trial judge to determine the factual basis for the plea. (134 Ill. 2d R. 402(c).) The factual basis for a guilty plea consists of an express admission by the accused that he committed the acts alleged in the indictment, or a recital of evidence to the court which supports the allegations in the indictment. (*People v. Green* (1973), 12 Ill. App. 3d 418, 420, 299 N.E.2d 535, 537.) Rule 402(c) is satisfied if there is a basis in the record "from which the judge could reasonably reach the conclusion that the defendant actually committed the acts with the intent (if any) required to constitute the offense to which the defendant is pleading guilty." (*People v. Barker* (1980), 83 Ill. 2d 319, 327-28, 415 N.E.2d 404, 408.) Because the purpose of Rule 402(c) is to enable a judge to determine that the conduct of a defendant constitutes the offense charged, the trial court may look anywhere in the record to find a sufficient factual basis for the plea. (*People v. Stice* (1987), 160 Ill. App. 3d 132, 513 N.E.2d 463.) If a court concludes that a factual basis is insufficient, it must submit the case

for trial. *People v. Dilger* (1984), 125 Ill. App. 3d 277, 465 N.E.2d 937.

Defendant argues that it is impossible to determine from the State's factual basis when, how, and in what amount a delivery of cocaine took place. Defendant notes that the State informed the court that the instant offense involved an eight-ounce "purported" purchase of cocaine for $8,000, not from the defendant, but from Blackshear. Further, the State told the court that "up to an ounce" of controlled substance was later seized from Blackshear's residence. Defendant believes that based upon the State's incomplete picture, the court erred in accepting the State's factual basis as adequate, and argues that the court should have transferred his case to the trial call.

 While the State's factual basis to the court may have been incomplete, the trial court could reasonably conclude from the record that defendant actually committed the offense to which he pleaded guilty. As the State argues, the evidence supports the theory that defendant was accountable for Blackshear's actions and that defendant aided Blackshear in planning and committing delivery of the cocaine to an undercover police officer. The theory of accountability holds a defendant responsible for another's action if "(1) defendant solicited, aided, abetted, agreed or attempted to aid another person in the planning or commission of the offense; (2) this participation [took] place either before or during commission of the offense; and (3) [the act was performed] with the concurrent, specific intent to facilitate or promote the commission of the offense." (*People v. Saldana* (1986), 146 Ill. App. 3d 328, 334-35, 496 N.E.2d 757, 763.) It is not necessary to prove the defendant participated in the commission of the act which constituted the offense. (*People v. Sauer* (1988), 177 Ill. App. 3d 870, 876, 532 N.E.2d 946, 950.) If the defendant shares the same intent to accomplish an unlawful purpose, the requisite intent exists for a finding of guilt by accountability. (*People v. Kessler* (1974), 57 Ill. 2d 493, 315 N.E.2d 29.) As the State argues, the record shows that defendant helped arrange the deal, his participation occurred before actual delivery took place, he knew that the transaction was taking place, and acted with the specific intent to facilitate the commission of the offense. Thus, the trial court did not err in finding a factual basis and accepting defendant's guilty plea.

Defendant's next contention on appeal is that he is entitled to withdraw his guilty plea because the trial court failed to admonish him that a mandatory street-value drug fine would be imposed as part of his sentence. (Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1.1.) Defendant asks that he be allowed to withdraw his plea and plead

anew or, in the alternative, that the fine portion of his sentence be vacated as exceeding that for which he was properly admonished.

The State argues, and we agree, that defendant has waived this issue for review. Defendant failed to argue this issue in his motion to withdraw his guilty plea and in his amended motion to withdraw his guilty plea. Consequently, defendant has waived this issue for review. (*Stice*, 160 Ill. App. 3d at 134, 513 N.E.2d at 465; 134 Ill. 2d R. 604(d).) We believe the proper remedy for defendant here would be a claim under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*) for ineffective assistance of counsel. See *People v. Wilk* (1988), 124 Ill. 2d 93, 529 N.E.2d 218 (where the Illinois Supreme Court held that the appropriate remedy for defendants on appeal wishing to withdraw their guilty plea, who failed to file a motion under Rule 604(d) (134 Ill. 2d R. 604(d)) to withdraw their guilty pleas, was the Post-Conviction Hearing Act).

However, we do vacate defendant's street-value drug fine for another reason: we conclude it was a void order. Defendant also argues that the mandatory street-value drug fine cannot stand because (1) it was in excess of $500 for the five grams he was convicted of possessing; (2) it was not supported by the factual basis or the evidence at the sentencing hearing; and (3) it was entered after sentencing in a specific amount *ex parte* by Judge Witte, who earlier had been substituted from defendant's case. We agree, as does the State, that Judge Witte improperly imposed the fine.

Judge Witte had been substituted from this case on defendant's motion pursuant to section 114—5 (Ill. Rev. Stat. 1989, ch. 38, par. 114—5(a)). Thus, Judge Witte was without authority to enter any order on the merits of this case, including one assessing a specific amount for the mandatory street-value drug fine. Once a motion for substitution of judge is brought, the trial judge loses all authority and power over the defendant's cause, except to make all necessary orders to effectuate the change; and if the motion is improperly denied, all subsequent action of the trial court is void. (*People v. Redisi* (1989), 188 Ill. App. 3d 797, 801, 544 N.E.2d 1136, 1139.) A judge who has previously been substituted from a case may perform only formal or administerial functions having no direct relationship to the merits of the case. (*People v. Washington* (1984), 121 Ill. App. 3d 479, 485, 459 N.E.2d 1029, 1034.) Judge Witte's act was not a mere formal or administerial act, but instead was a specific finding and order. Thus, because the sentencing judge failed to assess a fine in a specific amount, and because Judge Witte was without authority to do so, we vacate the fine pursuant to our authority under

Supreme Court Rule 615 (134 Ill. 2d R. 615); since, however, it is a *mandatory* fine and defendant made no objection to it in his motions to withdraw his plea, we remand for imposition of the fine.

Defendant's final contention on appeal is that his sentence was excessive and was, in effect, a punishment for a crime more serious than he was convicted of committing. Defendant also believes that his seven-year sentence is excessive in light of his potential for rehabilitation.

Defendant first argues that he, in essence, was sentenced for a Class X crime. Defendant believes the court abused its discretion in considering the amount of drugs involved in the original planned transaction, eight ounces for $8,000, when he agreed to plead guilty to possession with the intent to deliver one to five grams of a substance containing cocaine. Defendant also notes that at sentencing, the State argued the large quantity of drugs involved in requesting a 10-year sentence. Defendant argues that this abuse is apparent when considering Blackshear's eight-year sentence. Blackshear pleaded guilty to two offenses, a Class X and a Class 1 offense, one of which involved the instant transaction. Defendant concludes that although he was allowed to request probation pursuant to this plea, it was meaningless since the court sentenced him as if he had been convicted of the Class X offense.

Defendant relies on *People v. Hill* (1973), 14 Ill. App. 3d 20, 302 N.E.2d 373, where the trial court, in pronouncing sentence, commented to the defendant that he might have been charged with a felony instead of a misdemeanor. Because the defendant was not charged with or proved guilty of a felony, it was improper for the trial court to use the possibility of being charged with a felony as a basis for either denying probation or setting defendant's sentence. The defendant in *Hill* had a considerable amount of mitigating evidence, and no prior criminal record, but was sentenced to the maximum term of imprisonment for the crime charged.

The trial court in the instant case did not sentence defendant for a Class X offense. It was proper for the court to consider the amount of the original proposed transaction, as well as the actual amount seized, in sentencing defendant. In *People v. Fitzgerald* (1977), 55 Ill. App. 3d 626, 370 N.E.2d 1207, the defendant was convicted of robbery and acquitted of armed robbery, even though there was evidence that a gun had been used in the commission of the robbery. During sentencing, the trial court mentioned the fact that a weapon had been used, and stated that it was a very serious offense. On appeal, the defendant cited *Hill* and argued that the trial court based his sen-

tence on offenses for which he was acquitted, namely, armed robbery. The appellate court disagreed, and held that there was credible testimony that a gun had been used in the offense, and that it was proper to consider this in sentencing the defendant. Here, there was undisputed evidence that the original transaction was to be for eight ounces of cocaine, and that nearly four ounces of cocaine were actually seized.

Moreover, this court has stated that "the decision in *Hill* stands only for the proposition that a trial court abuses its discretion when it considers an improper factor not supported by the evidence or fails to consider all of the statutory factors in aggravation and mitigation." (*People v. Glass* (1986), 144 Ill. App. 3d 296, 303, 494 N.E.2d 886, 890.) *Glass* dealt with the trial court's consideration at sentencing of facts underlying separate charges dismissed in return for a plea. *Glass* cited *United States v. Majors* (10th Cir. 1974), 490 F.2d 1321, 1324, for the proposition that "[t]he plea bargain and the indictment dismissal resulting from it did not and, indeed, could not, deprive the judge of the right and probably the duty of giving consideration to [the dismissed charges]." The rationale for this can be seen in *United States v. Doyle* (2d Cir. 1965), 348 F.2d 715, 721, quoted with approval by *Glass*: " 'The narrowing of the indictment to a single count limits the maximum punishment the court can impose but not the scope of the court's consideration within the maximum. The dismissal of the other counts at the Government's request was not an adjudication against it on the merits ***.' " (*Glass*, 144 Ill. App. 3d at 302, 494 N.E.2d at 889.) The same reasoning is applicable here.

We further note that our supreme court has stated that a sentencing body may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information it may consider or the source from which it may come, as long as the evidence is both relevant and reliable. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303.) The evidence concerning the amount of the proposed transaction and the amount actually seized here is both relevant and reliable. This evidence is relevant because it shows defendant's inclination to sell controlled substances in an amount greater than what he previously admitted selling. We also note that section 411 of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1411(2)) allows the sentencing court to consider unusually large quantities of controlled substances. The actual amount seized, nearly four ounces of cocaine, is an unusually large amount of controlled substance. In addition, the evidence is reliable, as there is no conflict in

the record of the amount of cocaine proposed in the original deal, and the actual amount seized.

Next, defendant's comparison of his sentence to Blackshear's does not show that the trial court sentenced him for a Class X offense. Although Blackshear pleaded guilty to two separate offenses, a Class X offense and a Class 1 offense, one of which involved the instant transaction, Blackshear had, unlike defendant, no prior record, and was younger than defendant. These facts explain the trial court's sentencing.

▪ Defendant's argument that his plea and reduction of the charge is meaningless in light of his seven-year sentence is also unpersuasive. As this court in *Glass* noted, citing *Doyle*, a plea agreement including a narrowing of an indictment to a single count (here the lowering of the offense from a Class X offense to a Class 1 offense), limits the maximum punishment the court can impose. (*Glass*, 144 Ill. App. 3d at 302, 494 N.E.2d at 889.) This is what defendant bargained for, and it is what he received. There was no agreement made concerning the length of defendant's sentence. Defendant was sentenced for a Class 1 offense, not a Class X offense.

Defendant's final argument here is that the trial court failed to adequately consider his rehabilitative potential. Defendant cites two cases in support of this argument: *People v. Smith* (1989), 178 Ill. App. 3d 976, 533 N.E.2d 1169, and *People v. Harris* (1989), 187 Ill. App. 3d 832, 543 N.E.2d 859. In these two cases, appellate courts reversed sentences where trial courts failed to adequately consider defendants' rehabilitative potential. Defendant argues that facts such as his prior criminal record, his employment record, his nearly completed college education, and his lack of involvement with drugs and those associated with them for the past two years, show that the trial court failed to adequately consider his potential for rehabilitation. Defendant believes the mitigating factors weigh heavily in his favor, as opposed to the "sole and improperly considered aggravating factor of what large amount of cocaine 'might have been' involved." At most, defendant argues, he was guilty of putting five grams of cocaine in the distribution market.

▪ Defendant's argument is unpersuasive. First, the amount of cocaine involved in the original transaction was neither the "sole" aggravating factor, nor improperly considered. Defendant had a prior record, and had admitted setting up drug transactions for Blackshear prior to the arrest in the instant case. Defendant went from arranging "small" drug transactions for Blackshear to arranging a deal for eight ounces of cocaine. Defendant even attempted to cut

Blackshear out of the deal and conduct the transaction on his own. Moreover, defendant's situation is not similar to that of the defendants in the two cases he relies on, both of which involved defendants with few or no aggravating circumstances, and many mitigating factors. Finally, as the State notes, defendant's seven-year sentence was well within the 4- to 15-year range available for a Class 1 felony. (Ill. Rev. Stat. 1989, ch. 56½, par. 1401; *People v. Manna* (1981), 96 Ill. App. 3d 506, 519, 421 N.E.2d 542, 551.) And, where mitigating evidence is before the court, as it was here, it is presumed that the sentencing judge considered the evidence, absent some indication other than the sentence imposed. *People v. Danis* (1984), 129 Ill. App. 3d 664, 670, 472 N.E.2d 1194, 1199.

Affirmed in part; vacated in part, and cause remanded with directions.

LUND, P.J., and STEIGMANN, J., concur.