# Illinois Official Reports

## Appellate Court

---

### *People v. Curtis*, 2021 IL App (4th) 190658

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICKY CURTIS, Defendant-Appellant. |
| District & No. | Fourth District<br>Nos. 4-19-0658, 4-19-0659 cons. |
| Filed | July 12, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Coles County, Nos. 16-CF-358, 17-CF-368; the Hon. Brien J. O'Brien, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Catherine K. Hart, and Amy J. Kemp, of State Appellate Defender's Office, of Springfield, for appellant.<br><br>Jesse Danley, State's Attorney, of Charleston (Patrick Delfino, David J. Robinson, and Brittany J. Whitfield, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Turner and Cavanagh concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Ricky Curtis, pleaded guilty to the offenses of unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2014)) and unlawful delivery of methamphetamine (720 ILCS 646/55(a)(2)(A) (West 2016)) as charged in two separate Coles County criminal cases, and the trial court sentenced him to a total of 32 years in prison. Thereafter, he filed a motion to withdraw his plea or reconsider his sentence, which the court denied. Defendant appeals, arguing his postplea counsel failed to strictly comply with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). We affirm.

¶ 2                                    I. BACKGROUND

¶ 3        In September 2016, the State charged defendant in Coles County case No. 16-CF-358 with unlawful delivery of a controlled substance (720 ILCS 570/401(d) (West 2014)) (count I) and unlawful possession of a controlled substance (*id.* § 402(c)) (count II). The charges were based on allegations that defendant knowingly delivered less than one gram of a substance containing heroin and knowingly possessed clonazepam. At the time the offenses were alleged to have been committed, defendant was on probation for a prior drug-related offense in Coles County case No. 15-CF-85. The record reflects the State also filed a petition to revoke defendant's probation in the 2015 case.

¶ 4        In March 2017, defendant was released on bond. In September 2017, the State charged him in Coles County case No. 17-CF-368 with unlawful delivery of methamphetamine (720 ILCS 646/55(a)(2)(A) (West 2016)), alleging that, in August 2017, he knowingly delivered less than five grams of a substance containing methamphetamine. The record further reflects that shortly thereafter, the State charged defendant with four additional felony offenses in Coles County case No. 17-CF-430, including one count of being an armed habitual criminal, two counts of unlawful possession of a weapon by a felon, and one count of possession of methamphetamine with the intent to deliver.

¶ 5        In September 2018, defendant pleaded guilty to two of the charges then pending against him—unlawful delivery of a controlled substance as charged in count I of case No. 16-CF-358 and unlawful delivery of methamphetamine as charged in case No. 17-CF-368. In exchange for his plea, the State agreed to the dismissal of count II in case No. 16-CF-358, the dismissal of all four counts in case No. 17-CF-430, and that defendant would be unsuccessfully discharged from his probation in case No. 15-CF-85. The State also agreed not to file any additional charges against defendant based upon "any instances or reports in [its] possession."

¶ 6        At defendant's guilty plea hearing, the trial court admonished him regarding the consequences he faced and the rights he was giving up by pleading guilty. Defendant indicated he understood the court's admonishments and asserted his pleas were being made voluntarily and of his own free will. The State then presented its factual bases for the offenses at issue, asserting its evidence would show that during controlled drug buys, confidential police sources purchased 0.4 grams of a substance containing heroin from defendant in September 2016 and 3.5 grams of methamphetamine from defendant in August 2017. Defendant agreed the State's evidence would show what it alleged and persisted in his pleas of guilty to both offenses. The court accepted defendant's pleas, finding they were voluntary and knowingly and intelligently made.

¶ 7        In February 2019, the trial court conducted defendant's sentencing hearing. Defendant's presence investigation report (PSI) showed he was 39 years old and had a significant criminal history with prior convictions for armed robbery and attempted robbery in 1996, possession of a controlled substance in 1997, manufacturing and delivery of a controlled substance in 1998, carrying or possessing a firearm in 2000, possession of a controlled substance in 2001, unlawful possession of a weapon by a felon in 2003, felony probationer escape and obstruction of justice in 2005, being an armed habitual criminal in 2009, and possession of methamphetamine in 2015. At the outset of the sentencing hearing, the State noted defendant also had a 2005 conviction for delivery of a controlled substance on school property, which was not reflected in the PSI. Further, the record reflects defendant was sentenced to various terms of imprisonment in the Illinois Department of Corrections (DOC) for all but two of his previous offenses. Most recent was a seven-year prison sentence in 2009 for being an armed habitual criminal.

¶ 8        At sentencing, the State presented testimony from defendant's probation officer, James Blagg, and two police officers, Brandon Splitter and David Reed. Blagg testified that in December 2015, he began supervising defendant in connection with his 2015 methamphetamine possession case. At that time, defendant was also on parole. While on probation, defendant did not comply with any of the conditions of his probation and had probation violations for testing positive for cannabis and Xanax, missing scheduled appointments, being unsuccessfully discharged from a treatment program, and providing false information about where he resided. In September 2016, Blagg placed defendant in custody "for some probation warrants" and upon searching defendant, found approximately 30 clonazepam pills in his pocket.

¶ 9        Splitter testified he was a police officer for the City of Charleston. He described using a confidential source to purchase heroin from defendant in September 2016 and "an 8 ball" of methamphetamine in August 2017. Also in September 2016, Splitter learned defendant was found with clonazepam pills in his possession. During an interview with Splitter that same month, defendant admitted that he obtained the pills illegally and that he had consumed some of the pills he obtained.

¶ 10        Reed, also a police officer with the City of Charleston, testified he interviewed defendant in October 2017. According to Reed, defendant admitted distributing methamphetamine and stated that "[h]e distributed approximately nine to ten 8 balls of methamphetamine a week." Reed testified an "8 ball" of methamphetamine weighed about 3.5 grams. He also stated defendant reported that he traded two or three grams of methamphetamine to an individual named Jordan Hays in exchange for a "black revolver pistol."

¶ 11        Reed further testified that during the investigation of defendant, the police received information that defendant was storing methamphetamine and firearms at the residence of an individual named Kayla Henry. Reed interviewed Henry at her home, and she directed him to a location in her residence where she stated defendant "had some firearms and some methamphetamine." Ultimately, two firearms, approximately 10.6 grams of methamphetamine, and a digital scale were found at that location. According to Henry, defendant had been staying with her "for a couple days" and was distributing methamphetamine from her apartment on a daily basis.

¶ 12        Following the State's evidence, defendant's attorney, Sean Britton, objected "to any testimony [regarding defendant's] possession of a firearm." He noted defendant pleaded guilty

to two drug-related offenses and that charges based on his possession of a weapon were dismissed. Britton further argued as follows:

"I understand that during a sentencing hearing evidence of prior misconduct, even acquittals can be presented during the course of the sentencing hearing. I do think first off that there are due process grounds for excluding any such testimony. I will note that the court system disagrees with me, but secondly particular to the testimony that's provided, while evidence of prior misconduct and even acquittals can be admissible at a sentencing hearing, the Court must still consider the trustworthiness of that testimony based on the source whether it appears to be trustworthy and whether the defendant had the opportunity to cross-examine the witness. *** I'd like to point out to the Court that while we haven't heard testimony, direct statements from [defendant] *** involving a revolver, there was a great deal of indirect testimony [defendant] has not been afforded an opportunity for cross-examination on. I would ask that [such testimony] be disregarded."

The trial court denied Britton's request to disregard the evidence but stated he could argue the weight that the evidence should be given for sentencing purposes.

¶ 13    Thereafter, defendant presented testimony from three witnesses. Stacy Sewell-Eich and Tomra Eich identified themselves as the maternal grandmother and mother, respectively, of defendant's 10-year-old son. Both had known defendant for approximately 15 years and acknowledged his many previous incarcerations. Sewell-Eich provided testimony regarding defendant's difficult childhood and his addiction to pills. Further, both witnesses described defendant's efforts to develop and maintain a relationship with his son. Both also noted defendant's participation in a mentoring program during his current incarceration and testified they observed positive changes in defendant as a result.

¶ 14    Additionally, James Allen Irwin testified he worked with defendant in the mentoring program at the Coles County jail. He stated the program was faith-based and that it "help[ed] people deal with their lives through Biblical teachings." According to Irwin, one of the "big points" of the program was that it cut the recidivism for participants "in half." He also described the positive changes he observed in defendant while participating in the program.

¶ 15    Finally, defendant submitted several exhibits for the trial court's consideration, including letters from various individuals written on his behalf and medical records showing defendant had been diagnosed with hypertension. He also made a statement in allocution in which he admitted to selling drugs and having "a drug problem," apologized for his behavior, and asserted he had "turned [his] life around."

¶ 16    Noting defendant was subject to mandatory consecutive sentences, the State argued the trial court should sentence defendant to 15 years in prison in case No. 16-CF-358 for unlawful delivery of a controlled substance and to 25 years in case No. 17-CF-368 for unlawful delivery of methamphetamine. Conversely, defendant's counsel asked the court to impose two consecutive sentences of only seven and a half years in prison. As stated, the court sentenced defendant to a total of 32 years in prison—14 years in prison for unlawful delivery of a controlled substance and 18 years in prison for unlawful delivery of methamphetamine.

¶ 17    In setting forth its decision, the trial court stated the factors in mitigation included that defendant's conduct neither caused nor threatened serious physical harm to another and that his imprisonment may cause hardship to his dependents. It found factors in aggravation included defendant's substantial history of criminal activity, the need for deterrence, that

defendant received compensation for committing the offenses at issue, and that he was serving a term of probation when the offenses were committed. The court further stated as follows:

"I have considered the fact that [defendant] has chosen to plead guilty to these offenses, so to an extent, he has taken responsibility. I am concerned by the evidence that [defendant] traded methamphetamine for a gun, but I'll make it clear that I'm not placing substantial weight on that. I didn't hear a denial from [defendant] that he in fact did so. In fact, the testimony I heard was that [defendant] acknowledged to the investigating officer that he had done so, but to be quite honest with you, that factor is not something that I'm weighing heavily. What I'm weighing more heavily is the defendant's substantial criminal history, the fact that he has been given opportunity after opportunity after opportunity to change his ways and apparently the lengthiest sentence to [DOC] that he received, which was seven years, did little or nothing to deter him or to encourage him from changing his ways. As previously indicated the factor of deterrence I think is extremely significant in this case in light of the fact that [defendant] both sold heroin and then while out on bond then decided to sell methamphetamine, so that illustrates to me that you just didn't get it. In fact, I would be concerned that if he was out today that he would be engaging in exactly the same type of behavior."

¶ 18    Following his sentence, defendant filed a handwritten "letter of appeal." In his letter, defendant claimed the sentences he received were excessive. He asserted he was "hurt" by evidence presented at his sentencing of "the gun charge that was dropped" and maintained he neither traded methamphetamine for a gun nor made such an admission to the police. He also asserted that Britton informed him the State "became aware that [a] guy named [R]ob was willing to come forth and let it be known that the gun was his" and that was "why [the State] dropped the gun charge and just wanted [defendant] to plea out to the meth delivery as well as the heroin charge." Because the State later argued defendant's "possession of [a] weapon" at sentencing, defendant felt he was "lied to" and "tricked" into pleading guilty.

¶ 19    The record reflects the trial court construed defendant's handwritten letter as a *pro se* motion to withdraw his guilty plea and reconsider his sentence. During a status hearing in the matter, Britton recommended the court appoint replacement counsel for defendant, noting that although defendant did not explicitly allege ineffective assistance of counsel, it was "tough *** to interpret some of [defendant's] comments *** in any other light than that he wasn't adequately informed of particular information from his attorney." The court agreed, stating defendant "doesn't come right out and say I'm alleging ineffective assistance, but, you know, certainly [an ineffective-assistance-of-counsel claim] could be something that he may choose to raise." It then appointed Todd Reardon to represent defendant.

¶ 20    In March 2019, Reardon twice appeared before the trial court. On March 5, 2019, he stated he had not yet contacted defendant but indicated he had read defendant's *pro se* filing. Reardon asked the court to order transcripts of the proceedings at issue, including defendant's sentencing hearing. On March 26, 2019, he indicated he had read the transcript of defendant's guilty plea hearing but not the transcript of defendant's sentencing, and he asked for a continuance. In May 2019, Reardon appeared before the court and stated he had "reviewed all the transcripts" and was trying to set up a phone conference with defendant to "figure out what his complaints are."

¶ 21    In September 2019, Reardon filed an amended motion to withdraw defendant's guilty plea or, alternatively, reconsider his sentence. The motion contained allegations that the sentences

imposed by the trial court were not proportional to the offenses to which defendant pleaded guilty and that evidence of his possession of a gun was improperly admitted at his sentencing. The amended motion further stated as follows:

> "[T]he [d]efendant was advised by his counsel that the charges he would plea[d] to would not involve a plea to unlawful possession of a weapon, and that [d]efendant would not have accepted a plea agreement if said gun-related charge were included, or used against him at sentencing. Further, the true owner of the firearm was available to refute the [gun's] connection to [defendant]."

Reardon also filed a certificate pursuant to Rule 604(d), which stated as follows:

> "1. I have consulted with the Defendant in person to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence[,]
>
> 2. That I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing[,] and
>
> 3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 22    The same month, the trial court conducted a hearing on defendant's amended motion to withdraw his plea or reconsider his sentence. Defendant testified on his own behalf. He acknowledged being charged with "some firearms violations" and asserted he provided Britton with the names of witnesses who would refute that he exchanged firearms for drugs. Defendant further testified as follows:

> "Q. Okay. Now, *** you end up taking an open plea, did you not?
>
> A. Yes, sir.
>
> Q. To a distribution of meth, is that correct?
>
> A. Yes, sir.
>
> Q. And separate offense of heroin, right?
>
> A. Yes, sir.
>
> Q. Were you told that your gun charges would not play a role?
>
> A. Yes, I was told that when—they wouldn't play a role in any—
>
> Q. Okay. And who told you that?
>
> A. *** Britton."

Defendant maintained he was "caught off guard" when the issue of firearms came up during his sentencing hearing and was never told "that the weapons charges could be used against [him] in aggravation." He asserted he would not have accepted the open plea offer had he known the State would "back door *** in the weapons." Defendant testified he was not guilty of the weapons charges and wanted to withdraw his guilty plea. Alternatively, defendant wanted the court to reconsider his sentence and "ignore anything about the firearms."

¶ 23    On cross-examination, defendant agreed that when he entered his guilty pleas, he was not threatened by anyone nor did Britton "promise [him] anything that wasn't relayed on the record." He further acknowledged that the State dismissed several charges that were pending against him pursuant to the plea agreement. On redirect examination, defendant testified he was influenced into pleading guilty by Britton's statement that his "weapons charges wouldn't be used." He reiterated that he would not have pleaded guilty if he knew "the State was going to use [the weapons charges at his] sentencing hearing."

¶ 24    Reardon argued to the trial court that defendant was prejudiced by the presentation of evidence related to the weapons charges at his sentencing and should be allowed to withdraw his guilty plea. He asserted it was clear that the weapons-related charges were dismissed and noted defendant's assertion that "his attorney [stated those charges] would not be used." Alternatively, Reardon asked the court to reconsider defendant's sentences, noting the offenses at issue involved minimal amounts of drugs.

¶ 25    Ultimately, the trial court denied defendant's motion. It noted its comments at the sentencing hearing regarding the evidence of the weapons-related charges and stated as follows:

> "So, I guess the only mistake I made was to say that I am not placing substantial weight on [the evidence of the weapons-related charges]. I guess it could be inferred that that means I am placing some weight on it. So, maybe that was a poor choice of words on my part, but I think it is clear, and it is my opinion that this sentence was based upon the significant past criminal history. I think I even recalled making reference to the multiple prior sentences to [DOC]. And I think it was at least nine, perhaps ten.

> I considered the nature of the past offenses, and the duration of the prior sentences. And in my opinion, the sentence to the 14 years in the one charge and the 18 in the other was reasonable, was supported by the various factors in aggravation that I considered. ***

> There is no question in my mind that this was a voluntary guilty plea after being correctly and appropriately admonished.

> I guess if I had to do it over again, I would perhaps indicate that I am placing no weight on the firearms issue; but if I did consider it, it was negligible consideration on my part. It was the defendant's past criminal history that in my mind justified this sentence."

¶ 26    Defendant filed notices of appeal in both case No. 16-CF-358 and case No. 17-CF-368. His appeals were consolidated on review.

¶ 27                                    II. ANALYSIS

¶ 28    On appeal, defendant argues Reardon, his postplea counsel, failed to strictly comply with the requirements of Rule 604(d). He contends that although Reardon filed a "facially valid" Rule 604(d) certificate, the record, nevertheless, "refutes Reardon's certification" because Reardon's amended motion to withdraw guilty plea or reconsider sentence failed to "set forth any recognized basis for plea withdrawal despite the record availability of [such] arguments." In particular, defendant maintains his available bases for plea withdrawal were (1) ineffective assistance of counsel based upon Britton, his defense counsel, incorrectly advising him regarding the use of evidence related to his dismissed weapons charges at sentencing and (2) his resulting misapprehension of fact or law regarding the use of such evidence at sentencing. He complains Reardon's amended motion failed to set forth legal or factual grounds to support those bases of withdrawal.

¶ 29    "Rule 604(d) governs the procedure to be followed when a defendant wishes to appeal from a judgment entered upon a guilty plea." *In re H.L.*, 2015 IL 118529, ¶ 7, 48 N.E.3d 1071. It requires a defendant's attorney to file a certificate with the trial court, asserting the following:

"1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;

2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and

3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. July 1, 2017), Art. VI Forms Appendix.

Rule 604(d)'s purpose is to ensure that before a defendant appeals from a guilty plea, the trial judge who presided over the plea proceedings and sentencing is " 'given the opportunity to hear the allegations of improprieties that took place outside the official proceedings and *dehors* the record, but nevertheless were unwittingly given sanction in the courtroom.' " *H.L.*, 2015 IL 118529, ¶ 9 (quoting *People v. Wilk*, 124 Ill. 2d 93, 104, 529 N.E.2d 218, 221-22 (1988)).

¶ 30        "[T]he certificate filed by counsel must strictly comply with the requirements of Rule 604(d)." *People v. Easton*, 2018 IL 122187, ¶ 26, 123 N.E.3d 1074. "If the certificate fails to meet this standard, a reviewing court must remand the case to the trial court for proceedings that strictly comply with Rule 604(d)." *Id.* When considering the issue of Rule 604(d) compliance, we apply a *de novo* standard of review. *Id.* ¶ 25.

¶ 31        Further, "[a] defendant has no absolute right to withdraw his guilty plea" and, instead, "must show a manifest injustice under the facts involved." *People v. Hughes*, 2012 IL 112817, ¶ 32, 983 N.E.2d 439. "Withdrawal is appropriate where the plea was entered through a misapprehension of the facts or of the law or where there is doubt as to the guilt of the accused and justice would be better served through a trial." *Id.* Additionally, "[o]ne basis for the withdrawal of a guilty plea is where defense counsel gives the defendant inadequate advice prior to entering the plea." *People v. Glover*, 2017 IL App (4th) 160586, ¶ 39, 85 N.E.3d 815. To prevail on an ineffective assistance claim, "the defendant must show (1) deficient performance (*i.e.*, counsel's representation fell below an objective standard of reasonableness) and (2) prejudice (*i.e.*, but for counsel's unprofessional errors, the result of the proceeding would have been different)." *Id.*

¶ 32        Initially, we note that the State responds to defendant's arguments on appeal by citing this court's decisions in *People v. Grice*, 371 Ill. App. 3d 813, 816, 867 N.E.2d 1143, 1146 (2007), and *People v. Neal*, 403 Ill. App. 3d 757, 760, 936 N.E.2d 726, 728 (2010), for the proposition that the Rule 604(d) "certificate itself is all this court will consider to determine compliance with Rule 604(d)." However, to the extent the State suggests a facially valid Rule 604(d) certificate may not be refuted by the record, we disagree.

¶ 33        First, when taken in context, neither *Grice* nor *Neal* supports the State's suggestion or applicability of the cited proposition to the circumstances presented here. In *Grice*, the certificate at issue was not in compliance with Rule 604(d) because it "failed to state that counsel had reviewed the guilty-plea proceedings." *Grice*, 371 Ill. App. 3d at 815. When faced with that facially invalid certificate, this court "explicitly decline[d]" to examine the record and determine whether defense counsel's conduct otherwise satisfied Rule 604(d)'s requirements. *Id.* at 816. We further stated as follows:

"By promulgating Rule 604(d), the Supreme Court of Illinois has already determined the required content of the certificate, and it is the duty of this court—and the trial

courts—to ensure that this supreme court mandate is followed. Thus, in this case and henceforth, the certificate itself is all that this court will consider to determine compliance with Rule 604(d)." *Id.*

¶ 34        This court's decision in *Neal*, 403 Ill. App. 3d at 759, also involved a Rule 604(d) certificate that was facially deficient. In remanding the matter to the trial court, we cited *Grice* for the proposition that "[t]he certificate itself is all this court will consider to determine compliance with Rule 604(d)." *Id.* at 760 (citing *Grice*, 371 Ill. App. 3d at 816). Significantly, however, we also acknowledged that "we may consider the record where it undermines the certificate filed" and pointed out how the deficient certificate in that case was further refuted by the record. *Id.*

¶ 35        Clearly, both *Grice* and *Neal* are factually distinguishable. Unlike the present case, which involves a facially valid Rule 604(d) certificate, the certificates in *Grice* and *Neal* were facially deficient. Under such circumstances, a reviewing court does not need to look any further than the certificate itself to find noncompliance with Rule 604(d). Further, as set forth above, *Neal* contemplates that the same is not true where the record contains evidence that might contradict a defense counsel's certification.

¶ 36        Second, case authority otherwise refutes the State's suggestion that the record may not be utilized to refute compliance with Rule 604(d) or that a facially valid certificate is conclusive of the issue. See *People v. Winston*, 2020 IL App (2d) 180289, ¶ 14, 155 N.E.3d 1125 ("[E]ven when the [Rule 604(d)] certificate is valid on its face, a remand will be necessary if the record refutes the certificate."); *People v. Bridges*, 2017 IL App (2d) 150718, ¶ 8, 87 N.E.3d 441 (stating that even when counsel files a facially valid certificate, a reviewing court may consult the record to determine whether counsel actually fulfilled his or her Rule 604(d) obligations); *People v. Herrera*, 2012 IL App (2d) 110009, ¶ 13, 970 N.E.2d 1219 ("We will not waste judicial resources by scouring through the record to determine whether an attorney actually complied with the rule. [Citation.] *Unless the record undermines the certificate*, *** the only thing we consider in determining compliance with Rule 604(d) is the certificate itself." (Emphasis added.)); *People v. Love*, 385 Ill. App. 3d 736, 736-37, 896 N.E.2d 1062, 1064 (2008) (remanding for compliance with Rule 604(d) where the defendant's counsel filed a certificate that "conformed to the technical requirements of Rule 604(d)" but made remarks during a hearing that cast doubt on her certification); *People v. Little*, 337 Ill. App. 3d 619, 621-22, 786 N.E.2d 636, 638 (2003) (discussing how the record refuted a defense counsel's Rule 604(d) certification that counsel had reviewed certain transcripts).

¶ 37        In this case, there is no dispute that Reardon filed a certificate that met the technical requirements of Rule 604(d). However, as stated, defendant argues the record contradicts Reardon's certification that he made the amendments necessary to defendant's *pro se* filing to adequately present defects in the guilty plea proceedings. Specifically, defendant argues Reardon should have, but failed, to allege withdrawal of his pleas was warranted due to Britton's ineffectiveness in giving "affirmative misadvice" regarding the use of evidence relating to defendant's dismissed weapons charges and defendant's resulting misapprehension of fact and law regarding the use of such evidence at his sentencing. Although we agree with defendant that a facially valid Rule 604(d) certificate may be refuted by the record, we disagree that the record in this case rebuts Reardon's certificate and demonstrates his noncompliance with the rule.

- 9 -

¶ 38    Initially, we find nothing in the record prior to defendant's testimony at the hearing on the motion to withdraw his plea or reconsider his sentence supports—or indicates defendant's desire to raise—a claim that he was improperly advised regarding the effect of the dismissal of his weapons-related charges. The transcript of the guilty plea hearing reflects only that defendant was properly admonished and his pleas were knowing and voluntary. Additionally, in his *pro se* "letter of appeal," which the trial court construed as a motion to withdraw his plea and reconsider his sentence, defendant asserted only that Britton explained to him the State's rationale for "dropp[ing] the gun charge" and alleged his consequent surprise by the State's presentation of evidence related to the weapons charges at sentencing. Defendant, however, raised no claim that Britton provided any improper or legally erroneous advice prior to his guilty plea. Further, the transcript of the sentencing hearing reflects no misconception by Britton regarding the admissibility of such evidence. In fact, he explicitly acknowledged that although he believed grounds existed for excluding the evidence, "the court system disagree[d] with [him]." See *People v. Glass*, 144 Ill. App. 3d 296, 302-03, 494 N.E.2d 886, 890 (1986) (rejecting the defendant's contention that the State could not use charges dismissed as part of a plea agreement in arguing for a maximum term at the defendant's sentencing).

¶ 39    Moreover, we find the record reflects Reardon, in essence, presented the trial court with the claims defendant maintains were absent from the amended motion—that Britton misadvised him regarding the use of the dismissed weapons-related charges, resulting in constitutionally deficient representation and a misapprehension of fact or law during the guilty plea proceedings. The amended motion Reardon filed on defendant's behalf included the claim that Britton advised defendant "that the charges he would plea[d] to would not involve a plea to unlawful possession of a weapon, and that [d]efendant would not have accepted a plea agreement if said gun-related charge were included, or used against him at sentencing." At a hearing on that motion, Reardon then presented defendant's testimony that, when he pleaded guilty, Britton told him his weapons charges "wouldn't play a role" or "wouldn't be used." Defendant asserted he was "caught off guard" when evidence related to those charges was presented at his sentencing. He maintained he would not have pleaded guilty if he had known the State would present evidence of his weapons-related charges.

¶ 40    In denying defendant's motion, the trial court found defendant's guilty pleas were voluntary and knowing. Additionally, its comments indicate it placed little, if any, weight on evidence of the dismissed weapons-related charges. Instead, the court stated defendant's sentence was based on his significant criminal history, which included multiple felony convictions and terms of imprisonment in DOC.

¶ 41    Ultimately, Reardon filed a facially valid Rule 604(d) certificate, and we find no support for defendant's claim on appeal that the record rebuts that certification by showing Reardon failed to make necessary amendments to defendant's *pro se* filing. Moreover, the trial court's statements in clarifying that it "plac[ed] no weight on the firearms issue" when imposing defendant's sentence strike at the heart of defendant's plea-withdrawal claims, which were based upon the court weighing the "firearms issue" in aggravation at sentencing. Given the court's comments, we fail to see how defendant could show the "manifest injustice under the facts involved" that is necessary to warrant a plea withdrawal. See *Hughes*, 2012 IL 112817, ¶ 32.

¶ 42                              III. CONCLUSION

¶ 43          For the reasons stated, we affirm the trial court's judgment.

¶ 44          Affirmed.