NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241081-U

NO. 4-24-1081

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 21, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| SALLY J. COLEMAN, | ) | No. 23CF2431 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*: The record does not rebut the representations that defense counsel made in her
certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024).

¶ 2    In the circuit court of Winnebago County, defendant, Sally J. Coleman, pleaded

guilty to one count of aggravated arson (see 720 ILCS 5/20-1.1 (West 2022)) in return for 10

years' imprisonment and the dismissal of the remaining counts of the indictment. Afterward, she

filed a motion to withdraw the guilty plea, which the court denied. Defendant appeals,

contending that defense counsel failed to fulfill her duties under Illinois Supreme Court Rule

604(d) (eff. Apr. 15, 2024). Pursuant to Rule 604(d), however, defense counsel certified that she

had fulfilled those duties. We conclude, *de novo*, that the record does not rebut the

representations that she made in her certificate. Therefore, we affirm the circuit court's

judgment.

¶ 3                                    I. BACKGROUND

¶ 4            On April 1, 2024, a grand jury returned an indictment against defendant. The indictment was made up of three counts: count I, aggravated arson (see *id.*); count II, aggravated battery (see *id.* § 12-3.05(d)(4)); and count III, threatening a public official (see *id.* § 12-9(a)).

¶ 5            At a hearing that same day, defendant proposed entering a negotiated guilty plea. The agreement between her and the State was that she would plead guilty to count I of the indictment and, in return, she would receive 10 years' imprisonment and the State would dismiss the remaining two counts of the indictment.

¶ 6            After swearing in defendant, the circuit court proceeded to admonish her. First, the court ascertained from her that she was 56 years old, that her highest level of education was a GED, and that the only medications she had been taking were blood pressure pills and ibuprofen. Then, after reviewing the terms of the plea agreement with her, the court read count I of the indictment to her. The court explained to her that, as charged in count I, the offense of aggravated arson was a Class X felony: "an extended term eligible Class X felony offense punishable by a minimum term in prison of 6 years and a maximum term in prison of up to 60 years," followed by 18 months of mandatory supervised release. (Defendant previously served a sentence of imprisonment for aggravated arson in Winnebago County case No. 06-CF-58.) The court further explained that the maximum fine was $25,000; defendant would not be eligible for probation; and when she was released from prison, she would have to register as an arsonist. The court then asked her, "[D]o you understand this offense of aggravated arson and the sentencing ranges that could go along with it?" She answered, "Yes." The court then asked her, "And is it the charge that today you're prepared to plead guilty to?" She answered, "Yes, sir."

¶ 7            Next, the circuit court requested from the prosecutor "a fact proffer with respect

to the events of October 16, 2023, as it relates to aggravated arson." The prosecutor read a proffer, the substance of which was as follows. On October 16, 2023, Investigator Carden of the Rockford Fire Department investigated a fire at Olesen Plaza, a residential building. Defendant, an occupant of apartment No. 804, was standing nearby. She was threatening people at the scene and was detained. Carden found that five separate fires appeared to have been set on three separate floors of the apartment building. The fire damage was to various doors in the building. In Carden's opinion, someone had set fire to the doors intentionally. Security video showed defendant setting the fires with a yellow spray can and a lighter. In defendant's apartment, investigators found a yellow spray can that appeared to match the yellow spray can in the security video. Also, the police found a lighter on defendant's person. When the prosecutor finished reading this proffer, the court asked defendant if she had been "able to hear and understand" it. She answered, "Yes." The court then asked her:

> "[U]nderstanding those are the facts the State believes and expects it could prove against you if you went to a trial but they're also the facts that you're accepting and pleading guilty to here this morning, do you remain willing to plead guilty to this offense of aggravated arson?"

She answered, "Yes." Then, in response to the court's inquiry, defense counsel stipulated that those were the facts in the discovery materials and that, "if proven at trial beyond a reasonable doubt," those facts "would support the entry of a judgment of conviction."

¶ 8    The circuit court then proceeded to admonish defendant on her trial rights. She acknowledged her understanding that, on all three counts of the indictment, she had the right to a jury trial in which she would be presumed innocent and in which she could not be convicted unless the State proved her guilty beyond a reasonable doubt. She acknowledged her

understanding that she could have either a trial by a jury of 12 citizens or a trial by a judge alone and that which kind of trial she had would be up to her alone. She acknowledged her understanding that, regardless of which kind of trial she chose, she would have the right, with the assistance of an attorney, to confront and cross-examine the witnesses against her and to call witnesses on her own behalf—and to obtain a court order compelling the attendance of witnesses if they refused to attend voluntarily. Defendant acknowledged her understanding that, before, during, and after the trial, she would have the right to be represented by an attorney. This attorney, the court explained, could be one whom she herself chose and hired, or, alternatively, if she could not afford an attorney, an attorney would be appointed to represent her at no cost to her. Defendant acknowledged her understanding that if she pleaded guilty to count I, there would be no trial of any kind on that count and that, instead, she would be convicted and sentenced on that count on the basis of her guilty plea.

¶ 9 The circuit court then asked defendant if she was willing to plead guilty to aggravated arson. She answered in the affirmative. The court asked her if she was willing to give up her right to have a trial on that charge. She answered in the affirmative. The court asked her if anyone had used force or threats to compel her to enter into the plea agreement. She denied that anyone had done so. The court asked her if anyone had tried to talk her into pleading guilty against her will. She answered, "No." The court asked her if she believed she had been given enough time to meet with defense counsel and to discuss going to trial versus entering a negotiated guilty plea. Defendant answered in the affirmative. The court asked defendant if she had received a sufficient opportunity to go through the discovery materials with defense counsel and seek legal advice from her. Defendant answered in the affirmative.

¶ 10 The circuit court asked defendant if she was satisfied with the legal advice and

representation she had received from defense counsel. Defendant answered, "Sort of." The court asked her to explain. She answered:

"When I looked at the discovery of the fire, I had told the State I'll take 10 years. But the fire wasn't that bad, Your Honor. It wasn't that bad at all. I mean, I could have pretty much took a push broom and cleaned it up within four hours."

The court pointed out to defendant that, regardless of whether the fire damage was minimal, the fire could have spread and people could have died. Defendant expressed relief that no one had died. The court reminded her, "The issue is, for my purposes, whether you believe you've been well represented by your attorney." Defendant then responded, "Yes, I do." The court asked her again, "In other words, you're satisfied with [defense counsel's] representation of you?" She answered, "Yes, sir."

¶ 11　　　　After reconfirming with defendant that she still wanted to plead guilty to count I and that she did not wish to go to trial, and after reconfirming that she understood the agreed-upon sentence, including the requirement that she serve at least 85% of the 10-year term of imprisonment, the circuit court found the proposed guilty plea to be knowing and voluntary, accepted it, and entered judgment on it. The remaining two counts of the indictment were dismissed, and the court sentenced defendant to the agreed-upon sentence of 10 years' imprisonment, with 168 days of presentence credit.

¶ 12　　　　On April 30, 2024, defense counsel filed, along with a Rule 604(d) certificate (see Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024)), a motion to withdraw the guilty plea and vacate the judgment. The motion requested this relief on the following two grounds:

"1. That the defendant did not knowingly, intelligently, and voluntarily waive [her] rights to jury trial, nor did the defendant fully understand or

comprehend the admonishments of the Court pursuant to [Illinois] Supreme Court Rule 402 [(eff. July 1, 2012)] at the time of the entry of the plea of guilty.

2. That shortly before the plea, the Defendant learned that her friend Allen Crawford passed away. The Defendant was not planning to proceed with the plea, but went along with it because she was distracted by grief."

¶ 13 On July 13, 2024, the circuit court held a hearing on the motion to withdraw the guilty plea. At the beginning of the hearing, defense counsel notified the court that defendant had written her a letter complaining of her performance and requesting that defense counsel add a claim of ineffective assistance to the postplea motion. Also, defense counsel mentioned that defendant had filed a complaint against her with the Attorney Registration and Disciplinary Commission (ARDC). Defense counsel recommended the appointment of "conflict counsel to represent [defendant] in the motion."

¶ 14 The circuit court responded that, before it appointed new defense counsel, it wanted to hear from defendant (1) why she had filed an ARDC complaint against defense counsel and (2) how defense counsel had been ineffective in representing her.

¶ 15 Defendant complained that defense counsel had delayed in conveying to her the State's plea offer. Then defendant argued that because the fire damage was minimal, the case was really a misdemeanor instead of a felony. In defendant's view, defense counsel had "railroaded" her into pleading guilty to a felony, whereas, more appropriately, she should have been sentenced to no more than time served. Then defendant accused police officers and county jail officials of committing wrongs against her.

¶ 16 The circuit court asked defendant to explain why, if the State's offer was unacceptable to her and defense counsel had given her ineffective assistance, she agreed to enter

the negotiated guilty plea—and why, during the admonishments at the guilty plea hearing, she answered "yes, yes, yes, yes, yes, yes" to the court's questions. She explained:

> "I spaced out in court, Judge. My best friend had just passed. So *** when you was talking to me, I was thinking about her, how she was asking for breakfast, and she asked to use the bathroom, went in there throwing up, throwing up blood. So when you was talking to me and asking me that, I kind of spaced out. I'm not going to lie. I space out. And I was thinking about her because they had just told me she had passed."

The court responded that if, at the guilty plea hearing, defendant had raised "concerns about being distracted by the grief of [her] friend," the court "would certainly have understood that if [defendant] wanted to plead guilty at a different time." At the guilty plea hearing, however, defendant said nothing about being distracted by grief, nor did she "say anything about [defense counsel] being difficult to work with, ineffective." Defendant again explained that she had "space[d] out in court." Also, she pointed out that other defendants convicted of arson in other cases had been treated more leniently. The court responded, "It doesn't matter. This is your case. All we're focused on is you and your case and how this went down." The court remarked, "And what you're telling me does not come close to rising to the level of an ineffective assistance of counsel claim against [defense counsel]."

¶ 17    The circuit court concluded that there was no reason to believe that defense counsel had been ineffective and there were no grounds for allowing defendant to withdraw her guilty plea.

¶ 18    Defense counsel persisted in her view that defendant "ha[d] the right to have an attorney representing her at the motion to withdraw plea, even though it's forecasted how it's

likely to *** pan out." The circuit court disagreed because the participation of defense counsel in a *Krankel* inquiry was not always necessary. See *People v. Krankel*, 102 Ill. 2d 181 (1984).

¶ 19        Defense counsel and the circuit court then had the following exchange:

"[DEFENSE COUNSEL]: Well, yes, Your Honor. But *** one of the issues that she had raised with me, which is an issue that I did put in my motion in writing, was her grief over *** her friend, so it, it wasn't only ineffectiveness, it was also whether or not that affected the voluntariness of the plea.

THE COURT: Right. Well—

[DEFENSE COUNSEL]: And I think *** she has the right to flush that out with the Court with the assistance of counsel.

THE COURT: I'm not sure if that's—I mean, I guess I could have made a record of having read that. And *** it doesn't contradict the transcript. [I]t's a so what. And, I mean, to me, even looking at that, it's a so what. So she has had grief over something. She still made the decision, and she still was placed under oath and testified to everything that she testified to. She raised no concerns about her grief. And if she raised them after the fact, I don't know what that has to do with it even; so [']I was grief-stricken and I made the wrong decision.['] [']But you did it anyway.['] "

The court again pointed out that defendant could have said, at the guilty plea hearing, " [']I've got grief; I've got an issue; I just would like to set this over.['] " Instead, she "expressed a little bit of concern and then plowed through it," thereby signifying that "she made a fully informed decision to plead guilty to a charge."

¶ 20        Then there was the following exchange between the attorneys and the circuit

court:

"[PROSECUTOR]: At this time, the motion is denied; is that correct?

THE COURT: Yes. For now, it's motion denied, *pro se* defendant's motion's denied.

[PROSECUTOR]: Thank you, Your Honor.

[DEFENSE COUNSEL]: And, again, *** with keeping the record clear, I did file a motion to withdraw on her behalf.

THE COURT: Yes."

¶ 21    On July 31, 2024, the circuit court entered an order reading, "Defense motion to withdraw guilty plea is heard and denied for the reasons stated on the record."

¶ 22    This appeal followed.

¶ 23                              II. ANALYSIS

¶ 24            A. The Lack of an Oral Argument at the Postplea Hearing

¶ 25    At the guilty plea hearing, defense counsel appeared to be under the impression that because defendant had expressed dissatisfaction with defense counsel's performance and had filed a complaint against her with the ARDC, an appointment of "conflict counsel" was necessary to argue the postplea motion that defense counsel had filed. We see no reason, however, why defense counsel would have been disqualified from arguing her own postplea motion. It is true that, after entering the negotiated guilty plea, defendant criticized defense counsel, and it is true that an attorney should not be expected to argue his or her own ineffectiveness (*People v. Lawton*, 212 Ill. 2d 285, 296 (2004)). The postplea motion, however, contained no claim of ineffective assistance.

¶ 26    Defendant quotes *People v. Barnes*, 291 Ill. App. 3d 545, 550 (1997): "It is well

settled that a defendant has the right to the aid of an attorney in the preparation *and presentation* of a motion pursuant to Rule 604(d), and such a motion should not be denied until that representation has been obtained." (Emphasis added.) The way that Rule 604(d) reads, however, the "presentation of any defects in" the "proceedings of the plea of guilty" is made through "any amendments to the [postplea] motion":

> "The defendant's attorney shall file with the trial court a certificate stating that the attorney has consulted with the defendant either by phone, mail, electronic means or in person to ascertain defendant's contentions of error in the sentence and the entry of the plea of guilty, has examined the trial court file and both the report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing, *and has made any amendments to the motion necessary for adequate presentation of any defects in those proceedings*." (Emphasis added.) Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 27 On April 30, 2024, defense counsel filed a certificate that tracked the language of Rule 604(d):

> "1. I have consulted with the Defendant in person, by mail, by phone or by electronic means to ascertain the defendant's contentions of error in the entry of the plea of guilty and in the sentence;
>
> 2. I have examined the trial court file and report of proceedings of the plea of guilty and the report of proceedings in the sentencing hearing; and
>
> 3. I have made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings."

¶ 28 Defendant admits that this Rule 604(d) certificate is "facially compliant." The

question for us, therefore, which we decide *de novo* (see *People v. Curtis*, 2021 IL App (4th) 190658, ¶ 30), is whether the record refutes the certificate (see *id.* ¶ 36). We do not see how the lack of an oral argument by defense counsel on the postplea motion refutes any of the representations in her Rule 604(d) certificate. Where does Rule 604(d) say anything about oral argument? Defense counsel prepared a postplea motion that presented defendant's claim that distraction over the death of her friend vitiated the knowingness and voluntariness of her guilty plea. This claim in the postplea motion was not dependent on its being orally reiterated at the postplea hearing. Attorneys are permitted to present their contentions to the court in writing.

¶ 29          Claims in a postplea motion are not lost or forfeited if defense counsel, for whatever reason, chooses not to orally argue them. Seemingly, from a legal point of view, little could have been said at the postplea hearing beyond what the motion already said: paragraph 1 claimed, essentially, that the guilty plea was not knowing, intelligent, and voluntary, and paragraph 2 explained why. Defendant does not specify what legal argument should have been made orally. The issue at the postplea hearing was factual: As a result of defendant's being distracted by the alleged death of her friend, was defendant's guilty plea unknowing, unintelligent, or involuntary? In other words, was defendant so "spaced out" that she could not understand the circuit court's admonishments at the plea hearing, and, as a result, there was no intelligent assent or acknowledgment behind the numerous sworn affirmative answers she gave? Only defendant could recount her subjective experience at the plea hearing—and in response to the court's questioning at the postplea hearing, she purported to do so.

¶ 30          We acknowledge defendant's point that, at all critical stages of a criminal proceeding, including the postplea stage, a defendant is entitled to receive effective assistance from counsel. See *People v. Vaughn*, 200 Ill. App. 3d 765, 771 (1990). We further acknowledge

- 11 -

defendant's point that "a denial of counsel at any critical stage" is, *per se*, reversible error, without any showing of prejudice from the denial. See *People v. Allen*, 220 Ill. App. 3d 772, 781 (1991). At the postplea hearing, however, defendant was not denied counsel. Defendant was represented by defense counsel, who was there at the hearing making arguments on defendant's behalf; it is just that defense counsel did not make much of an argument on the postplea motion she had filed. We are unaware of any case holding, however, that making little or no oral argument on a written motion is necessarily ineffective assistance. Again, the lack of an oral argument does not take away from what is set forth, in black and white, in the motion. It can be "within the wide range of reasonable professional assistance" to let a written motion speak for itself. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). In the light of the transcript of the guilty plea hearing, the postplea motion was unserious—the motion simply was not arguable— and it was not objectively unreasonable to refrain from compounding that unseriousness with an unserious oral argument. "Defense counsel is not ineffective for failing to make a fruitless argument." *People v. Crawford*, 2013 IL App (1st) 100310, ¶ 133.

¶ 31    Even if no reasonable attorney would have forgone an oral argument on the postplea motion, defendant must show prejudice: a reasonable probability of a different outcome had an oral argument been made. See *Strickland*, 466 U.S. at 695. Defendant does not tell us what arguments defense counsel should have made at the postplea hearing and how, in the light of the painstaking admonishments at the plea hearing, those arguments would have created a reasonable probability of a different outcome, namely, a granting of the motion to withdraw the guilty plea. See *id.*

¶ 32                B. The Sufficiency of the Postplea Motion

¶ 33    According to defendant, the record refutes the certification by defense counsel

that she "made any amendments to the motion necessary for the adequate presentation of any defects in those proceedings." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). Defendant criticizes the postplea motion in that, although paragraph 1 of the motion alleged that she "did not fully understand or comprehend the admonishments of the Court," the motion fails to explain the reason for her lack of full understanding or comprehension.

¶ 34        We disagree that paragraph 1 of the postplea motion is unexplained. The next paragraph of the motion explains that, during the admonishments, defendant "was distracted by her grief" over her friend who had passed away. Being "distracted" means being "mentally confused, troubled, or remote" (Merriam-Webster's Collegiate Dictionary 364 (11th ed. 2020)). The alleged distraction ties in with the allegation that defendant "did not fully understand or comprehend the admonishments of the Court."

¶ 35                    C. The Circuit Court's Mistaken Reference

¶ 36        Defendant complains, "The [circuit] court erroneously believed that [defendant] filed the motion to withdraw the guilty plea *pro se* and the court should have known that the motion was prepared by defense counsel." It is true the court said, "*Pro se* defendant's motion's denied," but the court merely misspoke, defense counsel immediately pointed out the error, and by saying, "Yes," the court signified its acceptance of the correction.

¶ 37                            III. CONCLUSION

¶ 38        For the reasons stated, we affirm the circuit court's judgment.

¶ 39        Affirmed.