2022 IL App (2d) 210735-U
No. 2-21-0735
Order filed July 13, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10-CF-613 |
| | ) | |
| PETER MAUTER, | ) | Honorable |
| | ) | John J. Kinsella, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Presiding Justice Bridges and Justice Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We grant the appellate defender's motion to withdraw because there is no arguably meritorious basis for an appeal.

¶ 2    Defendant, Peter Mauter, appeals from the judgment of the circuit court of Du Page County denying him leave to file his April 2020 proposed successive postconviction petition. The Office of the State Appellate Defender (OSAD) was appointed to represent defendant on appeal. The appellate defender now moves to withdraw, claiming that there is no nonfrivolous basis for an appeal. We grant counsel's motion to withdraw and affirm the trial court.

¶ 3                                    I. BACKGROUND

¶ 4      In March 2010, defendant was charged in an eight-count indictment with sex offenses against his daughters, D.M. and C.M.  Assistant Public Defender Brian Jacobs was appointed to represent defendant.

¶ 5      On August 17, 2010, Jacobs informed the court that the parties had reached an agreement by which defendant would enter open pleas of guilty to counts I through III of the indictment, each of which charged predatory criminal sexual assault of a child (720 ILCS 5/12-14.1(a)(1) (West 2004)) involving D.M.  In exchange for the pleas, the State would nol-pros the remaining five counts (IV through VIII), which named C.M. as victim and charged predatory criminal sexual assault of a child and aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2004)).  The trial court confirmed with the State that counts I through III each carried a range of 6 to 60 years' imprisonment and that, because of mandatory consecutive sentencing, defendant faced an aggregate sentencing range of 18 to 180 years' imprisonment.  See *id.* § 12-14.1(b)(1) (West 2008) (predatory criminal sexual assault of a child is a Class X felony punishable by a prison term of 6 to 60 years); 730 ILCS 5/5-8-4(a)(ii) (West 2008) (mandatory consecutive sentencing for predatory criminal sexual assault of a child); *id.* § 5-8-4(c)(2) (maximum limit on consecutive sentencing).  The prison time would be served at 85%.  The State noted that, without the dismissed charges, "[t]he mandatory [potential sentence] is three years to life."  (If convicted of predatory criminal sexual assault of a child against two or more victims, defendant would receive a mandatory natural life sentence.  See 720 ILCS 5/12-14.1(b)(1.2) (West 2008)).

¶ 6      After the State presented the terms of the agreement, the trial court addressed defendant personally and confirmed that he wished to plead guilty to counts I through III in exchange for the dismissal of the remaining five counts.  Defendant further confirmed that he wished to enter those pleas even though there was no agreement on sentencing.  The court then asked defendant

if he had had a chance to review the charges with Jacobs. Defendant replied, "Not exactly." The court then explained to defendant the charges and potential penalties on counts I through III. Defendant indicated that he understood this information and had no questions. The court then informed defendant that he had the right to plead not guilty to the charges and force the State to prove his guilt beyond a reasonable doubt at a jury trial or bench trial at which he would be entitled to confront the State's witnesses, call his own witnesses, and testify if he wished. Defendant replied that he understood those rights. Defendant acknowledged that he had signed a jury waiver and confirmed that he wished to waive his right to a jury trial. He said he understood that if he pleaded guilty, he would enjoy none of the foregoing rights and the court would proceed to sentencing. He further confirmed that no one had forced or threatened him to plead guilty or promised him anything for his pleas beyond the terms of the agreement. He also asserted that he was entering his pleas freely and voluntarily.

¶ 7    Defendant then entered pleas of guilty to counts I through III. At that point, the State remarked that "[t]he only addition" was that C.M., the named victim in counts IV through VIII, would read her victim impact statement at sentencing. Hearing this additional term of the agreement, the court queried defendant as follows:

> "THE COURT: Is that your agreement as well?
>
> [THE DEFENDANT]: Yes.
>
> THE COURT: Do you still wish to plead guilty to the charges?
>
> [THE DEFENDANT]: Yes."

¶ 8    The State then provided a factual basis for the plea. The trial court found the factual basis adequate and accepted the plea as knowing and voluntary.

¶ 9       Between September 2010 and May 2011, defendant filed two motions to withdraw his plea but withdrew both motions. In June 2011, he filed a third motion to withdraw his plea, alleging as follows. He had (1) "never seen a copy of the charges against him, even though he had requested [it] numerous times," (2) "never reviewed the police reports or other discovery with [Jacobs]," and (3) "never discussed the terms of the plea agreement with [Jacobs]." At the plea hearing, he "did not realize that he was pleading guilty, and was in a state of shock." He had "a slight hearing disability and could not hear what was being said by the Assistant State's Attorney during the plea proceedings." "As a result, [he] did not understand the nature and consequences of the plea proceedings."

¶ 10      At the hearing on the motion, defendant testified consistently with his allegations. Jacobs's testimony contradicted defendant's testimony. Specifically, Jacobs testified that he met with defendant early in the case, on April 21, 2010. At that meeting, he read defendant the indictment and explained the potential penalties, including that his sentences would be mandatorily consecutive and that he also faced a possible mandatory life sentence. Jacobs could not recall if defendant asked to see the indictment. Jacobs also could not recall if defendant asked for a copy of the police reports, but Jacobs stated that he was not permitted to provide copies of police reports. Instead, Jacobs read the police reports *verbatim* to defendant. They discussed possible defenses and the evidence against defendant. The April 21, 2010, meeting lasted about 45 minutes to an hour. Subsequently, Jacobs generally met with defendant before every court date. This amounted to about 9 or 10 meetings before the guilty plea. During those meetings, they discussed possible defenses, potential motions, the status of plea negotiations, and the specific terms of the State's plea offer that defendant ultimately accepted. When defendant asked questions, he seem satisfied with Jacobs's answers. He appeared to understand the proceedings.

He did not claim to have a hearing problem, and Jacobs was unaware of any such problem. Jacobs received in discovery an audio recording in which defendant confessed to performing a sex act with one of his daughters. Jacobs and defendant spoke specifically about the confession and how it impacted the defense's case. Jacobs recalled that, after the guilty plea, defendant called and expressed "confusion as to what he had pled guilty to."

¶ 11 The trial court denied defendant's motion to withdraw his plea. The court found Jacobs "far and away" more credible than defendant. The court fully accepted Jacobs's account of his engagement with defendant in the months before the guilty plea. The court specifically found "absurd" defendant's claim that he and Jacobs did not discuss the terms of the plea agreement. The court also noted that, at the plea hearing, it properly informed defendant of the charges, the terms of the plea agreement, and the rights he was waiving by pleading guilty. The court noted that each time it asked defendant if he understood, defendant said yes. The court concluded that the record established defendant's guilty plea as knowing, intelligent, and voluntary.

¶ 12 The trial court held a sentencing hearing on September 7, 2011. The State presented an audio recording of a conversation with police in which defendant admitted to sexual contact with D.M. and C.M. A child abuse investigator testified that C.M. reported that defendant had sexually abused her from age four to age eight. The State also submitted a victim impact statement in which C.M. described the lasting effects of the sexual abuse.

¶ 13 The State asked the court to impose three consecutive 17-year prison terms, for a total of 51 years. Defendant asked for three consecutive six-year terms, for a total of 18 years. Noting evidence that defendant abused C.M. as well as D.M., the court sentence defendant to three consecutive 15-year terms, for a total of 45 years. Defendant filed a motion to reconsider his sentence, which the trial court denied.

¶ 14    Defendant appealed, and we remanded for compliance with Illinois Supreme Court Rule 604(d) (eff. July 17, 2017). After proceedings on remand, defendant appealed, arguing that his case should again be remanded for compliance with Rule 604(d). We rejected that argument but granted defendant partial relief with respect to fines and fees. *People v. Mauter*, 2013 IL App (2d) 120481-U, ¶¶ 10-15.

¶ 15    In February 2014, defendant filed a postconviction petition under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)). He raised numerous ineffective-assistance claims as to both plea counsel (Jacobs) and postplea counsel. Defendant realleged several of the claims he brought against Jacobs in the June 2011 motion to withdraw the plea. Defendant also raised a new claim of Jacobs's ineffectiveness. Specifically, he alleged that, on May 17, 2010, Jacobs told him that the State was offering to recommend 30 years in prison in exchange for defendant's pleas to counts I through III. Jacobs did not mention that there was a time limit on the offer. Defendant asked Jacobs for time to consider the offer. Subsequently, the State superseded that offer with another offer. Defendant alleged that he "probably" would have immediately accepted the State's offer of 30 years had Jacobs told him that the offer had a time limit.

¶ 16    Defendant also claimed in the petition that the trial court violated his due process rights by failing to inform him that his convictions would expose him to civil commitment as a sexually dangerous person. Lastly, defendant asserted that his sentence was excessive.

¶ 17    The trial court summarily dismissed the petition. On appeal, defendant raised only one claim from the petition: that Jacobs was ineffective for failing to inform him that the 30-year offer had a time limit. We affirmed the dismissal because (1) defendant provided no evidentiary support for his allegation that the State made an offer of 30 years and, (2) in any event, defendant's

allegation that he "probably" would have accepted the offer had Jacobs told him of the time limit was not only conclusory but "hardly in accordance with the context or common sense." *People v. Mauter*, 2016 IL App (2d) 140522-U, ¶¶ 22, 26-27.

¶ 18    In October 2017, defendant sought leave to file a successive postconviction petition. In his proposed petition, he claimed that Jacobs was ineffective for failing to inform him that his convictions could result in his civil commitment as a sexually dangerous person. He claimed that he had cause for not bringing his claim earlier, because counsel on appeal from the dismissal of his first postconviction petition omitted the claim. The trial court denied defendant leave to file, finding that the claim lacked merit and so defendant was not prejudiced by counsel's failure to raise the claim in the prior postconviction appeal. Defendant appealed, and OSAD was appointed. We held that defendant could make no nonfrivolous claim that he had cause for failing to bring his claim earlier. Therefore, we granted appellate counsel's motion to withdraw and affirmed the denial of leave to file the successive petition. *People v. Mauter*, No. 2-17-1019 (2019) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 19    In July 2018, defendant filed a petition for relief from judgment (735 ILCS 5/2-1401 (West 2018)), claiming that his guilty plea was based on the State's use of "perjured testimony" in the factual basis for his guilty plea. Defendant claimed that, due to his hearing disability, he "could not hear a word of what the State's Attorney said during the whole [plea] proceeding." He discovered the "perjury" only after obtaining a transcript of the plea hearing.

¶ 20    The trial court denied the section 2-1401 petition, finding that defendant did not include specific allegations of (1) a meritorious claim or (2) due diligence both in bringing the claim in the original proceeding and in filing the petition. On appeal, we agreed with the appellate defender that there was no nonfrivolous basis for appeal. Specifically, defendant's petition was

untimely, and he presented no arguable excuse for the delay. *People v. Mauter*, No. 2-18-0755 (2020) (unpublished summary order under Illinois Supreme Court Rule 23(c)).

¶ 21    On April 30, 2020, defendant filed the motion at issue in this appeal: a motion for leave to file another successive postconviction petition. The central claim in his proposed petition was that his constitutional rights were violated at sentencing when the State presented, and the trial court relied on, evidence of C.M.'s abuse notwithstanding the dismissal (per the plea agreement) of the counts naming her as victim. Defendant alleged that the State, the trial court, and Jacobs each infringed his constitutional rights in connection with the evidence of C.M.'s abuse.

¶ 22    First, defendant claimed that the State breached the plea agreement and violated defendant's due process rights when it used C.M.'s allegations after dismissing the counts naming her and, thus, "effectively stat[ing] for the [r]ecord that no crime had been committed with regard to [counts IV through VIII]." (Defendant also claimed that the State breached the plea agreement by asking for three consecutive 17-year prison terms.)

¶ 23    Second, defendant asserted that the trial court did not admonish defendant at the plea hearing that the court "could or would use prior conviction[s] and the *nolle-prose* [*sic*] charges in aggravation against the [d]efendant at sentencing." Thus, defendant's plea was not knowing and voluntary. Moreover, the trial court "exceeded its [j]udicial [a]uthority" and "in essence [*sic*]" found defendant guilty on counts IV through VIII despite their dismissal. Also, the court sentenced defendant to " '[l]ife' in years" when the State's August 27, 2020, offer letter stated that the maximum sentence would be 18 years in prison. Defendant also claimed that the court violated the principles of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), when it considered the evidence of C.M.'s abuse.

¶ 24    Third, defendant claimed that Jacobs was ineffective for failing to inform defendant that "with [his] guilty [p]lea the [c]ourt at [s]entencing could use prior convictions and even [*n*]*olle-prose* [*sic*] charges against the [d]efendant when sentenced." Defendant suggested that "[t]here is no sound logic or advantage to a [p]lea bargain agreement when the State and the [c]ourt can use [*n*]*olle-prose* [*sic*] charges it said it would drop against you." Defendant asserted that, if properly warned of the consequences of pleading guilty, he "would have gone to [t]rial and not ended up with a '[l]ife' sentence in years." Defendant attached to his petition a copy of the August 17, 2020, offer letter from the State. In the letter, the prosecutor states that, in exchange for defendant's pleas of guilty to three counts of predatory criminal sexual assault of a child, the State will nol-pros all remaining counts, which "will change the defendant's minimum sentence from life imprisonment to eighteen years in the Illinois Department of Corrections [(DOC)]." The State would also "present victim impact statements at sentencing for both D.M. and C.M."

¶ 25    Defendant's motion for leave to file alleged that he had cause for failing to bring his claim earlier. He asserted that, from 2011 to 2018, he took the psychotropic medication trazodone for anxiety and depression. Trazodone's side "effects include sedation." He "was not thinking clearly under these meds. and that is why [he] failed to see these contentions in [his] case." "[His] meds were changed *** in 2018."

¶ 26    Defendant attached to his motion several pages of psychiatric reports from the DOC. These include mental health treatment plans, progress notes, and diagnostic evaluations. Pages are missing from most of the copies defendant submitted. A progress note from June 2018 reflects that defendant will decrease his intake of trazodone and begin taking Remeron. A progress note from August 2018 indicates, under "Current Psychotropic Medications," that defendant is taking Remeron and will discontinue his intake of trazodone. Remeron "[c]ontinues to be effective" and

trazodone is "[s]omewhat effective"; overall, defendant is satisfied with his current medications. The section entitled "History of Present Illness" notes that Remeron "has been helpful for [defendant's] flashbacks and nightmares (related to when he was in combat in the military)." Defendant's mood has improved but he still has some anxiety. He agrees with "tap[ering] off [t]razodone in favor of going up on Remeron." An evaluative section in the report states that defendant's "Thought Processes" are "Clear/Coherent" and that his "Thought Content" is "Unremarkable." A progress note from September 2018 reflects that the increased intake of Remeron has helped defendant's mood, anxiety, and insomnia.

¶ 27    None of the attached psychiatric records mention that trazodone had a sedative effect on defendant or impaired his thought processes.

¶ 28    Defendant also filed on April 30, 2020, a "Motion for Change of [P]lace of Trial" under "725 ILCS 5/114-6." Defendant alleged that his arrest in this case drew "inflammatory publicity" and that he can no longer expect an unbiased jury in Du Page County. He also claimed that, since Jacobs was now a Du Page County circuit court judge, all judges on the circuit had a "[c]onflict of [i]nterest" in hearing defendant's claim of Jacobs's ineffectiveness. Defendant was "rightfully and reasonably concerned [that] he cannot get a fair hearing or ajudication [*sic*] of the documented evidentiary claims contained in his [proposed petition]." He therefore asked that his proceedings be moved to another county.

¶ 29    The trial court denied both motions. Defendant filed a timely appeal. The trial court appointed OSAD.

¶ 30                                    II. ANALYSIS

¶ 31    The appellate defender moves to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63 (1993). Counsel states that he read the record

and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments why those issues lack arguable merit. We advised defendant that he had 30 days to respond to the motion. That time is past, and defendant has not responded.

¶ 32    Counsel identifies four potential issues for appeal and concludes that none has arguable merit. We agree.

¶ 33                          A. Denial of Motion to Change Venue

¶ 34    We depart from the order in which counsel addresses the potential issues. We address first whether the trial court erred in denying defendant's motion to change venue.

¶ 35    Defendant sought reassignment of his case to another county for two reasons: (1) there was such negative publicity surrounding his case that he cannot expect an unbiased Du Page County jury, and (2) any judge in the circuit court of Du Page County has a conflict of interest because Jacobs is now a judge on that circuit and defendant is alleging Jacobs's ineffectiveness.

¶ 36    As counsel notes, defendant's motion was brought under inapplicable authority. "[T]he Illinois statutory provisions relating to substitutions of judges and changes of venue do not apply in post-conviction proceedings." *People v. Thompkins*, 181 Ill. 2d 1, 22 (1998). Judicial substitution in postconviction cases is governed by constitutional requirements, and "only under the most extreme cases is disqualification on the basis of bias or prejudice constitutionally required." *Id.* The defendant must demonstrate that he would be "substantially prejudiced" if he was denied a substitution of judge. *People v. Enis*, 194 Ill. 2d 361, 416 (2000).

¶ 37    The defendant in *Thompkins* asserted a judicial conflict of interest in similar circumstances. Before the evidentiary hearing on his postconviction petition, the defendant

claimed that he could not get a fair hearing in the Cook County circuit court because his former defense counsel, whom he was alleging had been ineffective, was now a Cook County judge. The trial court denied the request for a change of venue, and the supreme court affirmed. *Thompkins*, 181 Ill. 2d at 21-23. The court noted that the defendant relied solely on the notion that "one Cook County circuit court judge cannot sit in judgment over the prior conduct of another Cook County circuit court judge." *Id.* at 22. Similarly, here, defendant baldly asserts that all trial judges in Du Page County have a conflict of interest as to claims alleging the ineffectiveness of Jacobs while he was a practicing attorney. Without further evidence of bias, this claim fails under *Thompkins*.

¶ 38    Defendant's other claim is that the jury pool in Du Page County is tainted. In so arguing, defendant anticipates that his postconviction proceedings might result in a jury trial. Because we hold, for the reasons given below, that the trial court properly denied defendant leave to file, we need not decide whether defendant could receive a fair jury trial in Du Page County.

¶ 39    B. Denial of Leave to File a Successive Postconviction Petition

¶ 40    The remaining three potential issues counsel identifies concern whether the trial court erred in denying defendant leave to file his successive postconviction petition. Counsel frames those issues as:

> "(A) Whether the State violated the Due Process Clause and breached the terms of the plea agreement by presenting evidence at sentencing that [defendant] had committed predatory criminal sexual assault of a child *** against C.M.

> (B) Whether the trial court violated the Due Process Clause by accepting [defendant's] guilty plea without first admonishing him that at sentencing it could

consider evidence that he committed [predatory criminal sexual assault of a child] against

C.M., or evidence of other uncharged crimes.

(C) Whether [Jacobs] provided [defendant] with ineffective assistance of counsel

when Jacobs failed to inform him that the court at sentencing could consider evidence that

he committed [predatory criminal sexual assault of a child] against C.M., or evidence of

other uncharged crimes."

¶ 41    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) is a

procedural means by which a defendant can pursue a claim that his conviction or sentence was

based on a substantial denial of his constitutional rights. *People v. Boykins*, 2017 IL 121365, ¶ 9.

Successive postconviction petitions are highly disfavored. *People v. Bailey*, 2017 IL 121450,

¶ 39. Section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2018)) provides that "[o]nly one

petition may be filed *** without leave of the court." Leave of court may be granted if the

defendant establishes (1) "cause" for failing to bring the claim in his initial postconviction petition

and (2) "prejudice" resulting from that failure. *Id.* To establish "cause," the defendant must show

that some objective factor external to the defense impeded his ability to raise the claim in his

initial petition. *People v. Davis*, 2014 IL 115595, ¶ 14; 725 ILCS 5/122-1(f) (West 2018). To

establish "prejudice," the defendant must show that the claimed constitutional error so infected

his trial that the resulting conviction or sentence violated due process. *Davis*, 2014 IL 115595,

¶ 14; 725 ILCS 5/122-1(f) (West 2018). [T]he cause-and-prejudice test for a successive petition

involves a higher standard than the first-stage frivolous or patently without merit standard that is

set forth in section 122-2.1(a)(2) of the Act [(725 ILCS 5/122-2.1(a) (West 2018))]." *People v.*

*Smith*, 2014 IL 115946, ¶ 35. "Section 122-1(f) does not provide for an evidentiary hearing on

the cause-and-prejudice issues and, therefore, it is clear that the legislature intended that the cause-

and-prejudice determination be made on the pleadings." *Id.* ¶ 33. Meeting the cause-and-prejudice test "requires the defendant to submit enough in the way of documentation to allow a circuit court to make that determination." (Internal quotation marks omitted.) *Id.* ¶ 35. Leave to file should be denied "when it is clear, from a review of the successive petition and the documentation submitted by the petitioner, that the claims alleged by the petitioner fail as a matter of law or where the successive petition with supporting documentation is insufficient to justify further proceedings." *Id.* We review *de novo* the denial of leave to file for failure to show cause and prejudice. *People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 42   With respect to cause, defendant alleged that he could not have brought his claim earlier because, from 2011 to 2018, the sedative effects of the drug trazodone impaired his ability to think clearly and prevented him from recognizing the basis for his claim. Defendant submitted psychiatric records to support this allegation. However, the records attribute no such effects to trazodone. Defendant implied that his switch to Remeron increased his energy and clarified his thought processes, enabling him finally to identify the claim he would bring in his current proposed petition. However, while the records mention some specific benefits from Remeron—related to mood, flashbacks, and nightmares—there is no mention of improved energy or mental clarity.

¶ 43   We also note that, despite the purportedly sedative effects of trazodone, defendant was prolific from 2011 to 2018 in his *pro se* attempts to obtain relief from his convictions. During that period, he filed his initial postconviction petition (2014), his motion to file his first successive petition (2017), and his section 2-1401 petition (2018). The claims in these petitions concerned the same subject matter as defendant's current claim: Jacobs's representation in the plea process and the trial court's admonishments at the plea hearing. Significantly, defendant's motion for

leave to file did not explain how he was able to recognize the bases of these prior claims despite the allegedly stultifying impact of trazodone yet was *unable* to recognize the basis of his current claim. We conclude that there is no arguable basis to assert that defendant had cause for failing to bring his claim earlier.

¶ 44     Defendant's assertion of prejudice likewise lacked potential merit. We begin with the settled principle that the rules of evidence governing trials are relaxed at sentencing hearings and that the court may consider any relevant and reliable evidence in aggravation or mitigation. *People v. Olson*, 2019 IL App (2d) 170334, ¶ 26; see also *People v. Jackson*, 149 Ill. 2d 540, 549 (1992) ("[R]elevance and reliability are the important factors in the consideration of evidence at sentencing."). The defendant's "history of prior delinquency or criminal activity" is an aggravating factor at sentencing. 730 ILCS 5/5-5-3.2(a)(3) (West 2008). Relevant criminal history includes uncharged criminal conduct. *People v. Flores*, 153 Ill. 2d 264, 296 (1992). The court may also consider criminal conduct underlying charges that were dismissed as part of a plea agreement in the case. *People v. Glass*, 144 Ill. App. 3d 296, 302-03 (1986).

¶ 45     First, we agree with counsel that there is no nonfrivolous argument that the State breached the plea agreement or violated defendant's due process rights by presenting, in aggravation, evidence that defendant abused C.M. The State's agreement to nol-pros counts IV through VIII in exchange for guilty pleas on counts I through III was not, by itself, a tacit promise not to present the facts underlying those dismissed charges as aggravating evidence at sentencing. *Id.* at 302-303. Nor, contrary to defendant's assertion, was the *nolle prosequi* a binding acknowledgment that defendant did not commit the offenses charged in counts IV through VIII. "A *nolle prosequi* is the formal entry of record by the prosecuting attorney which denotes that he or she is unwilling to prosecute a case." *People v. Norris*, 214 Ill. 2d 92, 104 (2005). It leaves the matter in the same

condition as before the prosecution commenced and does not bar further prosecution. *People v. Hughes*, 2012 IL 112817, ¶ 23. If a *nolle prosequi* does not bar further prosecution, it necessarily does not bar the State from presenting the facts underlying the dismissed charges as aggravating evidence at sentencing. The State was clear at the plea hearing that it intended to introduce C.M.'s victim impact statement into evidence at sentencing. Addressing defendant personally, the trial court confirmed that defendant understood the State's intent yet still wished to plead guilty. Previously in this case, defendant claimed to have had a hearing problem that impacted his awareness of what occurred at the plea hearing. Defendant did not allege that impairment again in his current motion for leave to file or in his proposed petition. In any event, even if defendant did not hear the State say it would present C.M.'s victim impact statement, the State did not explicitly state that it *would not* present such evidence, and, as noted, the mere dismissal of counts IV through VIII was not an implicit promise to that effect (see *Glass*, 144 Ill. App. 3d at 302-03).

¶ 46    We also note that the record rebuts defendant's claim that the State breached the plea agreement by seeking three consecutive 17-year sentences. At the plea hearing, the State agreed only to dismiss certain charges. Defendant personally acknowledged at the plea hearing that there was no agreement on sentencing. Defendant also misunderstands the State's August 2020 offer letter to mean that that the dismissed counts would change defendant's *maximum,* not *minimum*, sentence to 18 years' imprisonment.

¶ 47    Second, counsel is correct that it would be frivolous to argue that the trial court's guilty plea admonitions were flawed because the court did not admonish defendant that the State "could or would use prior conviction[s] and the *nolle-prose* [*sic*] charges in aggravation against the [d]efendant at sentencing." The trial court confirmed that defendant wished to plead guilty despite the State's intent to introduce at sentencing C.M.'s victim impact statement. Certainly,

the trial court gave defendant no *general* admonition about the State's use of prior offenses, but here defendant has specifically complained only about the evidence of C.M.'s abuse. In any event, defendant was entitled to no such general admonition. Illinois Supreme Court Rule 402 (eff. July 1, 2012), requires, among other things, that the trial court to advise the defendant of "the minimum and maximum sentence prescribed by law, including, when applicable, *the penalty to which the defendant may be subjected because of prior convictions* or consecutive sentences" (emphasis added) (Ill. S. Ct. R. 402(a)(2) (eff. July 1, 2012)). The emphasized language pertains to statutory allowances for greater penalties because of prior convictions; it does not require the trial court to admonish the defendant that the State is permitted to introduce evidence of prior offenses in aggravation. *People v. Rayna*, 32 Ill. App. 3d 924, 925 (1975); see also *People v. Warship*, 59 Ill. 2d 125, 128 (1974). As for constitutional requirements, due process mandates that a defendant be advised of the "direct consequences" of his guilty plea. *Hughes*, 2012 IL 112817, ¶ 35. "[A] direct consequence of a guilty plea is one which has a definite, immediate, and largely automatic effect on the range of a defendant's sentence." *Id.* Evidence of C.M.'s abuse would not have a "definite" or "automatic" impact on defendant's sentence where it was within the trial court's discretion to decide what weight, if any, to assign it. And, contrary to defendant's suggestion, the trial court's reliance on that evidence did not infringe due process principles as recognized in *Apprendi*. "[A]ny fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The State offered evidence of C.M.'s abuse not to increase the prescribed statutory maximum but to increase defendant's sentence within that maximum.

¶ 48 Finally, counsel is correct that defendant cannot credibly argue that Jacobs was ineffective for failing to inform defendant that "with [his] guilty [p]lea the [c]ourt at [s]entencing could use

prior convictions and even [*n*]*olle-prose* [*sic*] charges against the [d]efendant when sentenced." "An attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently." *People v. Hall*, 217 Ill. 2d 324, 335 (2005). A claim that counsel was ineffective as regards a guilty plea is judged by the standards of *Strickland v. Washington*, 466 U.S. 668 (1984). *Hall*, 217 Ill. 2d at 334-35. Under *Strickland*, a defendant must establish that counsel's performance fell below an objective standard of reasonableness and that the defendant was prejudiced by counsel's substandard performance. *Strickland*, 466 U.S. at 688, 694.

¶ 49     Once again, we emphasize that defendant expressly acknowledged on the record that he wished to continue with his guilty plea despite the State's declared intent to introduce at sentencing C.M.'s victim impact statement. Defendant has not alleged that Jacobs told him that the State *could not* present such evidence at sentencing. Moreover, Jacobs was required only to ensure that defendant was " '*reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' (Emphasis in original.)" *People v. Hale*, 2013 IL 113140, ¶ 16 (quoting *People v. Curry*, 178 Ill. 2d 509, 518, (1997)). As explained, the direct consequences of a guilty plea do not include the State's presentation of aggravating evidence at sentencing.

¶ 50     Defendant also made no arguable showing of prejudice from Jacob's representation. Defendant had to show "a reasonable probability that, absent counsel's errors, the defendant would have pleaded not guilty and insisted on going to trial." *Hall*, 217 Ill. 2d at 335. "A bare allegation that the defendant would have pleaded not guilty and insisted on a trial if counsel had not been deficient is not enough to establish prejudice." *Id.* Rather, "for a guilty-plea defendant to obtain relief on a claim that he relied on his counsel's erroneous advice about a consequence

of his plea, the defendant " ' "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." ' " *People v. Brown*, 2017 IL 121681, ¶ 48 (quoting *People v. Valdez*, 2016 IL 119860, ¶ 29, quoting *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010)).

¶ 51 Defendant asserted that, if Jacobs had properly informed him of the consequences of pleading guilty, he "would have gone to trial and not ended up with a '[l]ife' sentence in years." As counsel notes, the plea agreement offered defendant, at age 59, the possibility of a "survivable" sentence, as the aggregate range was 18 to 180 years in prison. If, however, defendant went to trial and was convicted of predatory criminal sexual assault against both C.M. and D.M., a natural life sentence would be mandatory (see 720 ILCS 5/12-14.1(b)(1.2) (West 2008)). To the extent defendant insinuated that he would not have been convicted at trial on the counts that would trigger a mandatory natural-life sentence, he had to support that assessment by articulating either a claim of actual innocence or a plausible defense to the charges. *People v. Hatter*, 2021 IL 125981, ¶ 26. He did not do so.

¶ 52 For these reasons, we agree with counsel that it would be frivolous to argue that the trial court erred in denying defendant leave to file his successive postconviction petition.

¶ 53                                    III. CONCLUSION

¶ 54 After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw and affirm the judgment of the circuit court of Du Page County.

¶ 55 Affirmed.